# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEROJET ROCKETDYNE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL AEROSPACE, INC., et al.,<br><br>Defendants. | No. 2:17-cv-01515 KJM AC<br><br><br><br>ORDER |

This matter is before the court on defendant Global's motion to compel, ECF No. 141, and plaintiff Aerojet's motion to compel, ECF No. 151. These discovery motions were referred to the magistrate judge pursuant to E.D. Cal. R. 302(c)(1). Both motions were taken under submission without oral argument. ECF No. 180. For the reasons stated below, the court will DENY Global's motion (ECF No. 141) and GRANT Aerojet's motion (ECF No. 151).

## I. Relevant Background

This is a liability insurance coverage action between plaintiff Aerojet Rocketdyne, Inc. f/k/a Aerojet-General Corporation ("Aerojet") and multiple of its insurers (collectively, "Global") arising out of a settlement agreement between Aerojet and Orbital Sciences Corporation ("Orbital"), a third-party company. ECF No. 95 at 8. According to the First Amended Complaint ("FAC"), the dispute between Aerojet and Orbital stemmed from two incidents, occurring on May 22, 2014 and October 28, 2014, in which engines supplied by Aerojet to Orbital failed, causing

1

property damage. ECF No. 63-1 at 12 (Corrected FAC). Aerojet alleges that on August 20, 2015, Orbital presented it with a 41-page draft complaint alleging breach of contract, negligence, misrepresentation, and other allegations. Id. at 13. The draft complaint claimed Orbital was owed "hundreds of millions of dollars" in damages, including damages to Orbital property, a NASA facility, repair and replacement damages, and other property damage including, but not limited to, delay costs. Id.

Aerojet alleges that on August 21, 2015, it provided a copy of the Draft Complaint to Global and requested Global provide coverage for the Orbital Claims. Id. Aerojet alleges it sought Global's consent to permit it to settle with Orbital on an expedited basis, and on September 1, 2015, Global provided that consent while reserving its right to deny coverage ("Non-Waiver Agreement"). Id. On September 21, 2015 Aerojet and Orbital settled for $50 million dollars. Id., ECF No. 95 at 8.

Aerojet sought indemnity from Global and alleges that Global wrongfully, and in bad faith, denied any defense or indemnity obligations for amounts Aerojet paid to Orbital under the settlement for the Orbital Claims, and has refused to pay any amount toward the defense and settlement. ECF No. 63-1 at 14. Aerojet brought this liability insurance coverage case for indemnity against Global alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Business and Professions Code §17200 et seq. ECF No. 63-1. Defendants answered and brought counterclaims for breach of the covenant of good faith and fair dealing, breach of contract, estoppel, and waiver. ECF No. 93.

**II. Motions**

Insurer defendant Global Aerospace Inc. ("Global") brings a motion to compel the production of several documents redacted as privileged, and seeks in camera review of those documents. ECF No. 141. Insured plaintiff Aerojet brings a motion to compel the production of several documents. ECF No. 151. The parties oppose one another's motions in the joint statements, respectively located at ECF Nos. 177 and 178.

////

////

### III. Analysis

A. "Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In response to a request for production of documents under Rule 34, a party is to produce all relevant documents in his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Under Fed. R. Civ. P. 37(a), a party may move for an order compelling disclosure or discovery if "a party fails to produce documents . . . as requested under Rule 34." Rule 37(a)(3)(B)(iv). The party seeking to compel discovery has the initial burden to establish that its request is proper under Rule 26(b)(1). If the request is proper, the party resisting discovery has the burden of showing why discovery was denied; they must clarify and support their objections. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975).

The law of the forum state governs claims of attorney-client privilege in diversity cases. Fed. R. Evid. 501. Accordingly, California law controls here. See Home Indem. Co. v. Lane Powell Moss and Miller, 43 F.3d 1322, 1326 (9th Cir. 1995). California's law of attorney-client privilege is statutory. California Evidence Code § 954 confers a privilege on the client "to refuse to disclose ... a confidential communication between client and lawyer." The party who seeks to invoke the privilege "must establish the preliminary facts necessary to support its exercise—i.e., a communication made in the course of an attorney-client relationship." Costco Wholesale Corp. v. Superior Court, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." Id.

Although the law of the forum state governs the substantive issue of attorney-client privilege in diversity cases, federal law governs procedure. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78–79 (1939). The use of *in camera* review to determine whether attorney-client privilege is properly claimed is a procedural matter. See, e.g., Noble v. Wells Fargo Bank, N.A., No. 1:14-

cv-001963-DAD-EPG, 2017 WL 5953164, at *1 (E.D. Cal. Jan. 18, 2017) (court engaged in *in camera* review while applying California substantive privilege law to case); MKB Constructors v. Am. Zurich Ins. Co., No. C13-0611JLR, 2014 WL 2526901, at *7 (W.D. Wash. May 27, 2014) ("Federal law, which governs the procedural aspects of this case, rests the determination of when to conduct an *in camera* review in the sound discretion of the court."). Under federal law, the decision to conduct an *in camera* review is a two-step process:

> In United States v. Zolin, the Supreme Court held that a court may conduct an *in camera* review of privileged materials to determine whether the crime-fraud exception applies, and established a two-step analysis for determining whether *in camera* review is appropriate. First, the party seeking *in camera* review must make a minimal showing that the crime-fraud exception could apply to the privileged materials. United States v. Zolin, 491 U.S. 554, 572 (1989). If this initial hurdle is overcome, then the district court has the discretion to conduct an *in camera* review. Id. This discretionary decision turns on "the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." Id. In In re Grand Jury Investigation, the Ninth Circuit held that the two-step Zolin process "applies equally well when a party seeks *in camera* review to contest assertions of [ ] privilege." In re Grand Jury Investigation, 974 F.2d 1068, 1074 (9th Cir. 1992).

Fourth Age Ltd. v. Warner Bros. Digital Distribution, No. CV 12-09912 AB (SHX), 2014 WL 12584447, at *4 (C.D. Cal. Oct. 9, 2014).

B. The Court Will Decline *In Camera* Review and DENY Global's Motion to Compel

Global seeks *in camera* review of the following unredacted documents from meetings of Aerojet's Board of Directors, described here in brief:

- AJ 141500 – AJ 141540; AJ 141527 – AJ 141531, and AJ 141534 – AJ 141540 (Exhibit J): Minutes of a Special Meeting of the Board of Directors on August 28, 2015, and three Power Point presentations, entitled "Antares AJ26 Summary," "Board of Directors Appendix – Alleged Defaults", and "Antares AJ 26 Financials Board of Directors August 28;

4

- AJ 141541- AJ141542 (Exhibit K): Minutes of the August 29, 2015 Special Meeting of the Board;
- AJ 142140 (Exhibit L): Minutes of a Special Meeting of the Board on June 25, 2015;
- AJ142552- AJ 152554 (Exhibit M); AJ 142879 – AJ142883 (Exhibit N); and AJ 143042 - AJ 143047 (Exhibit S): Minutes of Special Meetings of the Board held on January 3, 2014, July 24, 2015, and November 18, 2015, respectively;
- AJ 142884- AJ 142886 and AJ 142887 – 142889 (Exhibit O): Minutes of two Special Meetings of the Board on August 20, 2015 (AJ142885 – 142886) and August 25, 2015 (AJ142888 – AJ 142889);
- AJ 142890-AJ 142892 (Exhibit P): Minutes of a Special Meeting of the Board on August 28, 2015;
- AJ 142893 – AJ 142894 and AJ 142895 - AJ 142896 (Exhibit Q): Minutes of two Special Meetings of the Board on August 29, 2015;
- AJ 142897 – AJ 142898 and AJ 142899 - AJ 142900 (Exhibit R): Minutes of two Special Meetings of the Board on September 1, 2015;
- AJ 143062 - AJ 143068 (Exhibit T): The Minutes of a Meeting of the Board on June 25, 2015; and
- AJ 143069 – AJ 143073 (Exhibit U) and AJ 143074 – AJ 143076 (Exhibit V): Minutes of a Meeting of the Board on July 24, 2015 and August 20, 2015.

ECF No. 177 at 19-23.

Upon review of the redacted documents and the arguments of the parties, the court concludes that the documents were properly redacted on privilege grounds, and that no showing has been made that could persuade the court to conduct an *in camera* review.

Global does not dispute that Aerojet identified each of the documents in question in its privilege logs. ECF Nos. 177, 177-26. Aerojet has stated that the redacted portions of each of the documents reflect privileged and confidential communications from special meetings of the Board of Directors at which potential settlements between Orbital and Aerojet were discussed with its attorneys. ECF No. 177 at 26-30. With respect to Exhibit J, though the distribution list is

not available because it was circulated in hard copy, the redacted portions are clearly marked with notations of the bases for asserted privilege, and the agenda indicates that the meeting was for the purpose of discussing legal advice regarding the 2014 "tentative settlement." ECF No. 177-10. Likewise, Exhibit K contains no distribution list but contains only one fully-redacted page following the agenda, which clearly states on the bottom that it was prepared at attorney request in connection with confidential settlement discussions. ECF No. 177-11 at 3. The remaining exhibits have been designated as minutes from special board meetings to discuss settlement negotiations, and Aerojet represents that redacted portions reflect privileged discussions. ECF No. 177-11 through 177-22.

Global's attempts to undermine Aerojet's privilege claims do not make the necessary threshold showing that the attorney-client privilege does not apply; even if they did make such a showing, the court would not exercise its discretion to conduct an *in camera* review in light of Global's superficial arguments. Zolin, 491 U.S. at 572. Global asserts Aerojet's "heavy handed" redaction technique is evidenced by the fact that a sentence was redacted in one version of a document and not in another version. ECF No. 177 at 13 (comparing Exhibit H and Exhibit I). This single inconsistency is hardly evidence of broad based over-reach in the assertion of privilege. The sentence at issue states factually that a privileged legal review of a contract was underway; while this sentence is not itself privileged, it is not so clearly outside the scope of privilege as to call into question all of Aerojet's redactions. See ECF No. 177-8 at 3. Global's blanket argument that "[i]t appears most of the information redacted from the documents at issue in this motion is not privileged" does not meet Global's initial burden to call into question Aerojet's redactions, and even if it did, does not persuade the court to conduct an *in camera* review. For this reason, Global's motion is denied.

C. The Court GRANTS Aerojet's Motion to Compel

Aerojet moves to compel the production of several categories of documents: (1) information concerning Global's investigation of Aerojet's claims including allegedly privileged documents, (2) information related to other Global insureds, including Orbital, (3) claims manual file documents, and (4) joint defense agreements between the defendants. ECF No. 178 at 6.

1. <u>Aerojet is Entitled to Information Concerning Global's Investigation</u>

Aerojet asserts that it is entitled to documents stemming from Global's initial claims investigation, including the pre-denial investigation file of outside counsel Condon & Forsyth, claimed as attorney-client and/or work product privileged by Global. ECF No. 178 at 11-17. The court finds that these documents are not privileged and that Aerojet is entitled to a full production. The court has previously touched on this issue in addressing a motion for protective order brought by Global, which sought to bar Fed. R. Civ. P. 30(b)(6) topics related to Global's communication with outside counsel Condon & Forsyth and Hinshaw & Culbertson during the claims investigation process. ECF No. 137 at 4-7. The court ruled that such topics were not protected by attorney-client privilege because applicable law dictates that "when an attorney conducts an investigation not for the purpose of preparing for litigation or providing legal advice, but rather for some other purpose, [attorney-client] privilege is inapplicable." ECF No. 137 at 5 (quoting <u>Payton v. New Jersey Tpk. Auth.</u>, 148 N.J. 524, 550–51 (1997)).

Notwithstanding the court's prior ruling, Global now argues that this case falls outside the scope of the legal rule cited above because in Aerojet's case, coverage was immediately doubtful and required immediate legal analysis of coverage. ECF No. 178 at 22. To support this contention, Global submits a declaration from Anthony Murphy, Vice President for Global, which states that from "the outset, Global viewed Aerojet's claim as a coverage case that required in-house coverage counsel" and because Aerojet's claim was "purely [a] coverage case, Global anticipated the potential for litigation should it determine that there was no coverage." ECF No. 178 at 42.

Global's position is not persuasive; every investigation of an insured's claim prior to denial entails a question as to whether coverage exists – that is why there is a claim investigation process – and every investigation into a claim for coverage or indemnity could potentially result in litigation between an insured and its insurer. Global's assertion that it was more skeptical than usual that coverage existed does not remove it from the presumption that the investigation of the claim prior to denial was in fact just that: an investigation, and not preparation for litigation. For this reason, Aerojet is entitled to pre-denial claim investigation documents from

7

Global and its outside counsel Condon & Forsyth, including the investigation file.

### 2. Aerojet is Entitled to Information that Global had Knowledge of Orb-3

Aerojet seeks information in Global's possession about whether any other of Global's insureds had given Global information about the E-17 and Orb-3 incidents prior to Aerojet submitting its claim in August of 2015. ECF No. 178 at 18. Global asserts that this information is not relevant to any claim or defense, and that responding to such discovery would invade the privacy of non-parties. Id. at 28-29. The court finds Aerojet's position persuasive. One of the defenses Global raised in its answer is that Aerojet was the first source of non-public information about the incidents at issue, and that late notice put Global in an "untenable" position. ECF No. 65 at 17. Thus, when Global had knowledge of the incidents is relevant to a defense, and it is proportional in light of the size and scope of this case. Plaintiff is entitled to verify whether, as Global contends, it "first learned" of the incidents as late as August of 2015. As to privacy concerns, a stipulated protective order has been entered in this case. See ECF Nos. 36 and 37. Global does not explain why the protective order cannot satisfactorily protect any privacy concerns of third parties. Aerojet's motion to compel is granted on this point.

### 3. Aerojet is Entitled to Claims Manual Documents

Aerojet seeks to compel the remainder of Claims Manual documents, which have been withheld on grounds of relevance. EF No. 178 at 20. Aerojet argues these documents are relevant because Global contends that Aerojet improperly submitted and modified its claims, implicating themes of fraud, which in turn implicate Global's anti-fraud procedures. Id. Aerojet also argues that it is entitled to portions of the Manual regarding Claims Administration Fees, which go to Global's motive in failing to conduct a complete pre-denial investigation. Id. Global contends it has agreed to provide four of the five outstanding documents, with the exception of the Claims Administration Fees and Expense schedule. Global reasons that that "normal claims handling procedures did not apply to Aerojet's claim." ECF No. 178 at 29. This argument is not persuasive, for the same reason it was not persuasive as to attorney-client privilege: Global's heightened skepticism regarding coverage does not remove it from the ordinary legal rules surrounding insurance claim investigations. The Claims Administration Fees document goes to

8

Aerojet's claim that the investigation was improperly handled; it is therefore discoverable and Aerojet's motion to compel on this point is granted.

### 4. Aerojet is Entitled to Global's Joint Defense Agreement

Aerojet seeks production of Global's Joint Defense Agreement, which Global has refused to provide on the basis that it is irrelevant. ECF No. 178 at 20. Aerojet argues the document is relevant because it "is relevant to Global's erroneous claims of privilege during the claim investigation phase in this matter." Id. at 20-21. Aerojet argues the Agreement may shed light on which non-Global defendants engaged Condon & Forsyth and when, which goes to Global's claim that the insures hired Condon & Forsyth from the outset and Global's assertion of the common interest doctrine. Id. at 21. Global argues again that it did not engage in the normal claim handling process with respect to Aerojet's claim, but instead immediately treated the claim as a potential coverage action. ECF No. 178. Global relies on the declaration of Mr. Murphy, which states Global is authorized to "retain counsel for both defense of claims and for purposes of coverage advice and litigation on behalf of co-insurers." ECF No. 178 at 42. The court again rejects the theory that pre-denial investigation documents are privileged or otherwise exempt from discovery because of the special circumstances of Aerojet's claim. The court grants Aerojet's motion on this point.

## IV. Conclusion

For the reasons set forth above, Global's motion to compel (ECF No. 141) is DENIED in its entirety. Aerojet's motion to compel (ECF No. 151) is GRANTED in its entirety.

IT IS SO ORDERED.

DATED: March 12, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE