UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEROJET ROCKETDYNE, INC., | Case No. 2:17-cv-01515-KJM-AC |
| Plaintiff, | |
| v. | ORDER |
| GLOBAL AEROSPACE, INC., et al., | |
| Defendants. | |

On April 1, 2019, the assigned magistrate judge denied defendants and counterclaimant's[1] ("Global" or "Global defendants") motion to take additional depositions. Order, ECF No. 199; ECF No. 182 (motion). On April 15, 2019, Global moved for reconsideration of the magistrate judge's rulings. Mot., ECF No. 202.

I. BACKGROUND

As explained in numerous other orders, this liability insurance coverage case follows two 2014 incidents in which engines intended for use in space launches, supplied by Aerojet to non-party Orbital, failed; the failures ultimately led to a $50 million settlement between Aerojet and Orbital for which Aerojet sought coverage from its insurers, Global, and Global denied coverage. *See* Jt. St., ECF No. 194, at 13−19[2] (parties' respective statements of case). Rather than

---
[1] These defendants are Global Aerospace, Inc. and other defendant insurers, except defendant Mitsui Sumitomo Insurance, Co. of America, which has its own counsel. *See* ECF No. 154 ¶¶ 106−32 (identifying Global defendants).

1

provide an exhaustive review of the underlying facts here, the court addresses those facts as necessary to resolve the pending motion.

### A. Global's Motion and Aerojet's Opposition

Global moved for leave to take five additional depositions, a motion the parties briefed in a joint statement submitted to the magistrate judge on March 27, 2019. Jt. St., ECF No. 194. Arguing it "lack[ed] access to key evidence necessary to develop their defense and counterclaims" despite deposing twelve of its fourteen permitted fact witnesses, Global sought leave to also depose Aerojet in-house counsel Brian Sweeney,[3] Christopher Cambria[4] and Jeffrey Robb.[5] Jt. St. at 6, 19−23; *see* ECF No. 124 at 5−6 (magistrate judge's order denying without prejudice Global's earlier motion for leave to depose these witnesses, noting Global could renew its motion "if having taken other relevant depositions it becomes clear to Global that the attorney deponents possess non-privileged, non-duplicative information"). Global argued these depositions were necessary because other "witnesses have been unable to provide [the sought information], either due to lack of personal knowledge or recollection." Jt. St. at 6. According to Global, these deponents could provide "evidence of statements made to Global about Aerojet's indemnity claim, discussions with Orbital about the damages encompassed by the $50 million pre-litigation settlement, the efforts Aerojet made to collect all relevant damages information to present in its indemnity claim and the conduct of Global which Aerojet alleges in this litigation constituted bad faith," as well as "negotiations with Orbital and [the] attempt[] to finalize the terms of what Aerojet refers to as the 'handshake agreement.'" *Id.* at 8; *see also id.* at 6 (identifying scope of requested depositions as including "(1) communications with Orbital in 2014 and 2015; (2) communications with Global in 2015 and 2016; (3) communications with [Aerojet's broker] Marsh [Aviation and

---

[2] The court cites CM/ECF page numbers, not the briefs' internal pagination.

[3] Sweeney was Aerojet's former Vice President and General Counsel from 2010 to 2016 and Vice President, Legal & Contracts from 1999 to 2010. Jt. St. at 20.

[4] Cambria was Aerojet's General Counsel from 2011 to 2016. Jt. St. at 20.

[5] Robb was Aerojet's Associate General Counsel from 2006 to 2016. Jt. St. at 21.

Aerospace][6] after October 28, 2014; and (4) non-privileged documents to or from these persons that have been produced in this litigation").

Global also moved to depose Aerojet's Vice President of Business Management, John Canzio, and Aerojet's Vice President of Finance, John Myers, both of whom Global claimed Aerojet's former CFO Kathleen Redd had identified as "the source of information relating to Aerojet's financial assessment of its contractual liabilities in connection with the Orbital dispute and termination analyses, information which she was unable to explain or elaborate on in her deposition." *Id.* at 8 (footnote omitted), 22−23 ("This factual information is key to determining how Aerojet evaluated the Orbital claim prior to the Orb-3 incident."). Arguing it had not been able to obtain any explanation as to "the meaning of or why the words 'goodwill payment' were used in connection with certain payments that Aerojet was willing to make to Orbital in 2014," Global argued "Canzio and Myers were involved in developing the financial assessments of the claimed damages and were involved in the discussions surrounding those assessments," and thus likely had relevant testimony to offer on this point. *Id.* at 9.[7]

Aerojet opposed, arguing Global could not show any need to depose Aerojet's in-house counsel, as the information Global sought is duplicative of information in documents Aerojet already produced as well as testimony from non-attorney deponents, and none of the information sought was crucial to Global's case. *See, e.g.*, *id.* at 26 (arguing Global need not depose Aerojet's in-house counsel to determine the content of in-house counsel's discussions with Global). As to Myers and Canzio, Aerojet contends Global misconstrued their roles at Aerojet and involvement in the Orbital settlement. *Id.* at 27−28; *see* Jt. St. Ex. 1, ¶¶ 4−8 (Myers declaration stating he and Canzio were not involved in negotiations with Orbital in 2014 and did not analyze Orbital's claims or damages but did "periodically . . . consult[] . . . regarding the potential financial impacts to

---

[6] Neither party identifies Marsh by its full name in this motion, Aerojet's operative complaint or Global's operative answer and counterclaim. In an email attached to the joint statement, Marsh is identified as "Marsh Aviation and Aerospace."

[7] Global acknowledged Myers and Canzio may have overlapping knowledge, but sought to depose both because it had not been able to determine the degree of overlap in their knowledge. *Id.* at 23.

3

Aerojet" of a potential agreement with Orbital, "did review and pass on . . . the analysis done by Mr. [Jordan] Ware of the potential financial impacts to Aerojet if Orbital terminated the contract," and Myers participated in 2015 discussions concerning financial impacts to Aerojet of a settlement following Orbital's draft complaint); *see also* Jt. St. at 28 (Aerojet arguing Global misrepresents Redd's testimony, as she testified only that the reports "came through" Canzio and Myers, not that they were the authors).

B. The Magistrate Judge's Order

The magistrate judge denied Global's motion in full, finding, as to Sweeney, Cambria and Robb, the "proposed depositions . . . appear to be more burdensome than they are necessary, as they are unlikely to lead to non-duplicative information." Order at 3. Noting depositions of an opposing party's counsel are generally disfavored, the magistrate judge applied the test set forth in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), under which:

> [T]he court should order the taking of opposing counsel's deposition. . . . [only] where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

(internal citation omitted); Order at 3−4 (quoting *Stevens v. Corelogic, Inc.*, No. 14CV1158 BAS (JLB), 2015 WL 8492501, at *1 (S.D. Cal. Dec. 10, 2015) (applying *Shelton* test). The magistrate judge found Global had not established that the proposed deponents held "unique information that is crucial to the preparation of this case," citing the significant discovery that had already taken place "and the fact that others were present for nearly all of the interactions Global seeks information about." Order at 4; *see id.* ("Global's argument is not persuasive insofar as it does not point to specific facts that are solely within the wheelhouse of the proposed deponents, and this is especially true in light of the extensive and burdensome deposition discovery that has already taken place and is ongoing in this case.").

/////
/////
/////

4

As to Global's proposed depositions of Canzio and Myers, citing Myers' declaration and the then-upcoming deposition of Ware, the magistrate judge found Global had not made a particularized showing of necessity under Rule 30(a)(2)(A)(i).[8] *Id.* at 5.

II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 72(a) requires that district judges consider timely objections to nondispositive pretrial orders issued by magistrate judges and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); E.D. Cal. R. 303(f). "A Magistrate Judge's decision is 'contrary to law' if it applies an incorrect legal standard, fails to consider an element of [an] applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Martin v. Loadholt*, No. 1:10-cv-00156-LJO-MJS, 2014 WL 3563312, at *1 (E.D. Cal. July 18, 2014); 12 Fed. Prac. & Proc. Civ. § 3069 (3d ed. 2019) (noting "'contrary to law' appears to invite plenary review," though "many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis"). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)) (alteration in original). "[R]eview under the 'clearly erroneous' standard is significantly deferential . . . ." *Id.* at 623.

III. <u>DISCUSSION</u>

Global argues the factual findings the magistrate judge made in denying its underlying motion were clearly erroneous. Mot. at 6. Aerojet opposes. Opp'n, ECF No. 203. The court addresses Global's specific arguments below.

/////

/////

---

[8] In relevant part, this rule requires a party to obtain leave of court where "the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants . . . ." Fed. R. Civ. P. 30(a)(2)(A)(i).

A. Depositions of Aerojet's In-House Counsel

1. August 24, 2015 Conference Call

Global argues the magistrate judge "ignore[d] the cited deposition testimony establishing a lack of recollection on the part of both non-attorney participants in the August 24, 2015 conference call . . . ." Mot. at 15. The two non-attorney Aerojet participants referred to are Aerojet's former CFO Kathleen Redd and Aerojet's former Director of Risk Management William Marlow. Mot. at 7−8. Global reports the conference call participants included Sweeney, Cambria, Redd, Marlow, Global's Director of Claims and representatives from Aerojet's insurance broker, Marsh [Aviation and Aerospace]. *Id.*

Global appears to overstate both Redd's and Marlow's inability to recall the conference call. *See* Mot. at 3 (arguing Redd and Marlow had no "substantive recollection of what was said [during the call]"). Redd confirmed a draft summary of the Aerojet-Orbital dispute circulated to the call participants was prepared by Aerojet's in-house counsel. Redd Dep., Jt. St. Ex. A, at 92:1−21. She confirmed the Aerojet representatives who participated in the call, *id.* at 93:23−10, as well as some but not all of the Marsh representatives, *id.* at 94:25−95:20, though she did not specifically recall speaking to Global representatives, *id.* at 94:11−24. She also testified that, to the best of her knowledge, Marlow and Marsh decided to have Aerojet, Global and Marsh representatives participate in the call. *Id.* at 95:21−96:2. Redd testified to her general recollection that Sweeney reviewed Global Aerojet and Orbital's history on the call, though, when asked, she did not specifically recall Sweeney's identifying "several years of issues between Orbital and Aerojet," or "saying something to the effect of Orbital wanted to do things on the cheap" or otherwise "characterizing Orbital's approach to performance under the contract" or "saying anything about Orbital assuming risks under the contract," and she could not recall the specific goal of the call. *Id.* at 96:16−97:9, 97:17−99:6. Marlow testified that the August 24, 2015 conference call participants "were just going back and forth, discussing what had transpired and the work product that was sent out that Friday night." Marlow Dep., Jt. St. Ex. B, at 146:15−20. He did not specifically recall Global participants on the call or any of Cambria's statements during the call. *Id.* at 146:21−5. In Marlow's recollection, the parties did not "g[e]t into defense costs" on the call,

6

though he recalled that Aerojet's concerns regarding "defense costs in general going through the roof" motivated its desire to settle. *Id.* at 148:16−149:10. As with Redd, when asked if Sweeney made specific statements during the call, Marlow testified he could not recall the statements. *Id.* at 149:11−21 (Marlow unable to recall whether Sweeney indicated Aerojet wanted Global to contribute to the settlement or informed Global that Aerojet was "just talking about defense" rather than indemnity). Also, Aerojet notes, Marlow testified to at least one email following the conference call that addressed "the specifics of that call" and other such documents produced to Global, though neither party has provided the court with a copy of that email. *See* Opp'n at 6 (citing Marlow Dep. Ex. 98); *see* Marlow Dep. at 150:17−151:4 (upon reviewing email, testifying Aerojet was worried about its liability and "protracted legal fees and . . . wanted to . . . settle this . . . with minimal fanfare").

To the extent Redd and Marlow were unable to recall whether Sweeney made certain statements during the call, Global does not argue that it has any basis to believe Sweeney actually made such statements. For example, it is unclear why Global is frustrated by Marlow's inability to recall Sweeney's stating, "there was no indemnity claim at that time, [] they were just talking about defense," *see* Marlow Dep. at 149:16−18, when Global itself describes the August 24, 2015 conference call as "Aerojet [] not request[ing] a defense from its insurers but instead [seeking] contribution to its settlement within the week," Mot. at 9; *see also* Marlow Dep. at 148:16−149:10 (Marlow testifying Aerojet wanted to settle to avoid defense costs). While Global complains that neither Redd nor Marlow could recall which Global representatives participated in the call, Mot. at 8, Aerojet is essentially correct that Global does not suggest it is not privy to that information or has no other means of obtaining it, Opp'n at 6. Indeed, Global never explains whether it deposed the Marsh participants in this call or whether any such deposition also failed to turn up the information Global seeks here. Similarly, as Aerojet argues, having represented that Global's Director of Claims participated in the call, Global's complaints that Redd and Marlow could not specifically recall certain information possibly discussed in the call does not explain why Global cannot obtain this information from its own representative rather than Aerojet's in-house counsel. *See* Mot. at 9 (arguing "Global Defendants have no source of potentially admissible

7

evidence regarding what Aerojet told Global unless given leave to depose Messrs. Sweeney and Cambria"); Opp'n at 6 (countering that Global witness could testify to Aerojet representatives' statements under the party opponent exception to the hearsay rule, Fed. R. Evid. 801(d)(2)). At the same time, Aerojet cites no authority requiring Global to compromise its own privileged discussions with its client's representatives to obtain essential information, which certainly raises concerns. Fundamentally, however, Global did not make a clear case before the magistrate judge regarding its need for the information those it did depose were unable to provide.

In short, exercising the deference warranted under the circumstances, the court is not convinced the magistrate judge misconstrued the record before her and cannot find she committed clear error.

2. <u>September 4, 2015 through February 17, 2016 Communications</u>

Global argues the magistrate judge erred in finding Aerojet's in-house counsels' depositions were unlikely to lead to non-duplicative information because she "ignore[d] . . . the fact that non-attorney employees of Aerojet did not even participate in communications with Aerojet or Orbital between September 4, 2015 and February 17, 2016." Mot. at 15. Rather, because Sweeney had instructed Global to direct communications to him on September 4, 2015, Global argues deposing Sweeney is its only means of "obtaining information about communications between Orbital and Aerojet . . . that did not involve Global, and [the only] means of obtaining admissible evidence of statements made by Aerojet's in-house counsel about its claim to Global during communications in which no non-attorney participated . . . ." Mot. at 9−10; *id.* at 14 ("The Global Defendants know that some of the communications involving Global were substantive in nature and have reason to believe that some communications between Aerojet and Orbital that did not involve Global entailed substantive discussions concerning Aerojet's indemnity claim.").

Aerojet counters that Global has not shown it must depose Aerojet's in-house counsel to obtain non-privileged information when it has "substantial written and email communication between Aerojet and Orbital, . . . . has already deposed Aerojet's non-attorney witnesses who have knowledge of most of Aerojet's communications with Orbital" and could have, but did not, depose an Orbital representative to obtain the information it seeks. Opp'n at 8−9; Jt.

St. at 26. While Global appears to argue that only Sweeny is privy to this information, it provides no support for this contention, does not address why the non-privileged documents it received as well as depositions from others with knowledge of the relevant communications are inadequate, and does not explain why it chose not to depose Orbital on this topic.

Here as well, nothing in Global's motion convinces the court that the magistrate judge committed clear error. Mot. at 14.

### 3. Contract Negotiations and 2014 Settlement Negotiations with Orbital

Global next argues the magistrate judge's "characterization of Mr. Sweeney as a 'conduit for negotiations' . . . and the assumption that Mr. Robb's role as the point person for communications with Orbital . . . was of no significance are clearly erroneous as well." Mot. at 15.

With both characterizations, the magistrate judge found Global had not met its burden in showing Aerojet's in-house counsel held "unique information that is crucial to the preparation of this case." Order at 4 (finding Sweeney's lead role on the "'negotiating team . . . on its face . . . indicates others also participated in the relevant contract negotiations" and does not indicate "he is the sole source of crucial information"; applying same reasoning to Robb's role as point person in Orbital communications); *see also* Jt. St. at 25 (Aerojet identifying other participants in negotiations already deposed by Global). Nothing in Global's motion leaves the court firmly convinced the magistrate judge's assessment on these points was in error.

Global also argues that because Aerojet's expert witnesses "call into question the efficacy of Aerojet's contractual defenses to Orbital's claim," Global is entitled to depose Sweeney as he "is uniquely qualified to testify about the intention of Aerojet when entering into the agreement and signing off on the cross-waiver of liability with Orbital and to give testimony about industry practices concerning the contractual and waiver language that Aerojet's experts call into question." *Id.* at 15. Global did not squarely present this argument to the magistrate judge, which is puzzling given Aerojet's representation it disclosed at least one such expert report in April 2017. *See* Opp'n at 7. Aerojet also argues, persuasively, that Global may rebut Aerojet's expert testimony

/////

/////

9

with its own expert testimony and has not shown Sweeney's testimony is necessary for any such rebuttal. Opp'n at 7−8.

Here, again, the court cannot find the magistrate judge committed clear error.

B. Depositions of Myers and Canzio

Global argues, in a four-sentence footnote, that the magistrate judge committed clear error in "finding that the Global Defendants failed to make a particularized showing of a need to depose Messrs. Canzio and Myers." *Id.* at 16 n.5. Nonetheless, Global withdraws its request to depose Canzio and requests the court allow Global to depose Myers "only if the [May 15, 2019] deposition of Mr. Ware fails to disclose information about the analyses that are the subject of questions on which Ms. Redd deferred to Messrs. Canzio and Myers." Mot. at 11 & n.2, 16 n.5. Global has made no attempt, however, to notify the court whether the deposition of Ware mooted this motion as to Myers. In any event, Global's brief summary of arguments presented to and rejected by the magistrate judge does not satisfy this court that the magistrate judge committed clear error.

IV. SUMMARY

The motion is DENIED. This order resolves ECF No. 202.

IT IS SO ORDERED.

DATED: September 23, 2019.

_____
UNITED STATES DISTRICT JUDGE