UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEROJET ROCKETDYNE, INC., | Case No. 2:17-cv-01515-KJM-AC |
| Plaintiff, | |
| v. | ORDER |
| GLOBAL AEROSPACE, INC., et al., | |
| Defendants. | |

On March 13, 2019, the assigned magistrate judge denied defendants and counterclaimants'[1] ("Global" or "Global defendants") motion to compel the production of multiple documents redacted as privileged and declined its request for in camera review of those documents. Order, ECF No. 189. In that same order, the magistrate judge granted plaintiff Aerojet Rocketdyne, Inc.'s motion to compel production of several categories of documents Global contends are privileged. *Id.* On March 27, 2019, Global moved for reconsideration of the magistrate judge's rulings. Mot., ECF No. 197. Aerojet opposes. Opp'n, ECF No. 200. As explained below, the court DENIES in part Global's motion and, as to certain portions of the magistrate judge's order, REFERS this matter back to the magistrate judge for further explanation.

/////

---

[1] These defendants and counterclaimants are Global Aerospace, Inc. and other defendant insurers, except defendant Mitsui Sumitomo Insurance, Co. of America, which has its own counsel. *See* ECF No. 154 ¶¶ 106−32 (identifying Global defendants).

1

## I. BACKGROUND

As reviewed in numerous prior orders, this liability insurance coverage case follows two 2014 incidents in which engines for use in space launches, supplied by Aerojet to non-party Orbital, failed; their failure ultimately led to a $50 million settlement between Aerojet and Orbital for which Aerojet sought coverage from its insurers, Global. Global denied coverage. *See* Jt. St. re Global Mot., ECF No. 177, at 11−15[2] (parties' respective statements of case). Rather than provide an exhaustive review of the underlying facts here, the court addresses those facts as necessary to resolve the pending motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 72(a) requires that district judges consider timely objections to nondispositive pretrial orders issued by magistrate judges and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); E.D. Cal. R. 303(f). "A Magistrate Judge's decision is 'contrary to law' if it applies an incorrect legal standard, fails to consider an element of [an] applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Martin v. Loadholt*, No. 1:10-cv-00156-LJO-MJS, 2014 WL 3563312, at *1 (E.D. Cal. July 18, 2014); 12 Fed. Prac. & Proc. Civ. § 3069 (3d ed.) (noting "'contrary to law' appears to invite plenary review," though "many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis"). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)) (alteration in original). "[R]eview under the 'clearly erroneous' standard is significantly deferential . . . ." *Id.* at 623.

/////

---

[2] All citations to the parties' briefs correspond to CM/ECF page numbers, not the briefs' internal pagination.

III. DISCUSSION

Global contends the magistrate judge's rulings on the parties' respective motions to compel were clearly erroneous and contrary to law. The court addresses Global's arguments as to the two underlying orders separately.

A. Order Denying Global's Motion to Compel

1. The Parties' Briefing Before the Magistrate Judge

On January 30, 2019, Global moved to compel production of several documents, seeking in camera review to determine whether Aerojet properly invoked the attorney client privilege and work product doctrine. Global Mot. to Compel, ECF No. 141.

Specifically, Global sought the unredacted minutes of Aerojet's Board of Directors and Authorization Committee meetings and documents provided to those committees for their meetings, which Aerojet produced with redactions asserting the attorney-client privilege. Acknowledging that portions of these documents may be subject to a valid claim of privilege, Global requested the magistrate judge conduct an in camera review of the documents, arguing such review "is plainly available to federal courts sitting in diversity and applying the substantive privilege law of California." Jt. St. re Global Mot. at 7−8 (footnote omitted), 18.

Aerojet defended its redactions, arguing it was plain from the documents and Aerojet's privilege log that Aerojet had properly asserted the privilege. *See, e.g.*, *id.* at 27 ("The Agenda indicates this was not an ordinary board of directors meeting, but a special one called to specifically discuss, seek legal advice, and develop a legal strategy related to settlement."), 28 (arguing "[l]ess than one full paragraph in a 73 page package of board minutes" was redacted in Exhibit L; two paragraphs redacted in Exhibits M and N; one paragraph redacted in Exhibit S; with redactions applied only where Aerojet's counsel "provided legal advice to the Board"); *but see* Jt. St. re Global Mot. Ex. L (redacting one paragraph of 7 page, not 73 page, document). Aerojet also argued the magistrate judge, sitting in diversity, was prohibited from conducting in camera review. *Id.* at 23 (arguing "cases in this District treats [sic] [California Evidence Code] § 915 as substantive law on privilege, applicable in federal court").

/////

2. <u>The Magistrate Judge's Rulings</u>

The magistrate judge held that under *Erie*, "[t]he use of in camera review to determine whether attorney-client privilege is properly claimed is a procedural matter" governed by federal law.[3] Order at 4 (citation omitted); *see generally Laub v. Horbaczewski*, No. LACV1706210JAKKS, 2019 WL 1744846, at *4−6 (C.D. Cal. Feb. 8, 2019) (reviewing split among district courts as to whether California law on in camera review applies to federal courts sitting in diversity). After reviewing the applicable federal law governing the use of in camera review, which involves a two-step process and, ultimately, an exercise of discretion, the magistrate judge found without conducting in camera review that Aerojet sufficiently established the privileged nature of the documents and Global failed to call the privilege into question and thus failed to establish the need for in camera review. Order at 4−5; *see also United States v. Zolin*, 491 U.S. 554, 572 (1989) (establishing two-step analysis for in camera review); *In re Grand Jury Investigation*, 974 F.2d 1068, 1074−75 (9th Cir. 1992) (holding *Zolin* two-step process governs in camera review in challenges to privilege designations). The magistrate judge denied Global's motion in full.

3. <u>Global's Motion for Reconsideration & Analysis</u>

Global moves for reconsideration of the magistrate judge's order denying Global's motion to compel, first arguing the magistrate judge's assessment of a single proffered instance of Aerojet's inconsistent redactions, where a sentence was redacted in one version of a document but not in the other, was clearly erroneous. Mot. at 22−23; *compare* Jt. St. re Global Mot, Ex. H, ECF No. 177-8, at 3 (Nov. 7, 2014 Board minutes, unredacted), *with* Ex. I, ECF No. 177-9, at 3 (same minutes, with redaction of text reading's "Mr. Boley discussed the status of the investigation and indicated that a privileged legal review of the Antares contract and insurance coverage was underway. A lengthy discussion ensued"). Unpersuaded by Global's argument that this "example of the heavy-handed nature of Aerojet's redactions" supported the court's conducting an in camera review of all redacted board documents, *see* Jt. St. re Global Mot. at 13, the magistrate judge found,

---
[3] Because neither party objects to the magistrate judge's determination on this issue, the court assumes without deciding that determination was correct here.

4

"[t]he sentence at issue states factually that a privileged legal review of a contract was underway; while this sentence is not itself privileged, it is not so clearly outside the scope of privilege as to call into question all of Aerojet's redactions," Order at 6. Global contends the magistrate judge's ruling erroneously "creates degrees of privilege" and leaves Global "at a loss to understand what threshold showing must be made to persuade the Court to conduct an in camera review of a handful of documents." Mot. at 23. The court agrees with the former point, but not the latter conclusion. Because the privilege is either properly asserted or it is not, an erroneous redaction does not fall closer to or further from "the scope of privilege" depending on the circumstances. *See* Order at 6. But it does not follow that the magistrate judge erred in concluding that Aerojet's "single inconsistency" failed to demonstrate "broad based over-reach in the assertion of the privilege" across multiple documents, and this court finds no basis for reversing the magistrate judge's determination that Global did not meet its burden in showing in camera inspection may reveal evidence of unprivileged information. *See* Order at 6.

Global next argues it became aware of "[a] more compelling example of the heavy-handed nature of Aerojet's redactions" on February 28, 2019 when Global re-deposed Aerojet's witness Peter Cova.[4] Mot. at 23. Global provides no authority that allows, much less requires, this court to consider evidence not submitted to the magistrate judge in resolving a motion for reconsideration. *See McAdam v. State Nat. Ins. Co.*, 15 F. Supp. 3d 1009, 1013 (S.D. Cal. 2014) (disregarding declarations not presented to magistrate judge and finding "[a]n objection filed pursuant to 28 U.S.C. § 636(b)(1)(A) or Rule 72(a) may not be wielded as a shoehorn to add material to the record"). Global indicates Cova's testimony had not yet taken place when the parties filed their joint statement. Mot. at 23. But Cova's February 28, 2019 deposition took place before the magistrate judge issued her March 13, 2019 order, and Global apparently made no attempt to supplement the record before the magistrate judge or request she delay her ruling until such supplementation was possible upon the finalization of Cova's deposition transcript. Moreover, the

---

[4] Global does not identify Cova's title. Aerojet's supplemental disclosures, attached to the parties' joint statement, identifies Cova as Aerojet's Senior Director of Program Management for the AJ-26 Program. Jt. St. re Global Mot., Ex. F, ECF No. 177-6, at 3.

document at issue in Cova's testimony was not a document covered by the underlying motion. Rather, Global indicated in a footnote that it would separately move to compel production of this document, though it appears from a review of the docket Global has not moved to compel the production of any document since filing this motion for reconsideration and thus never filed a motion to compel production of the document at issue in Cova's deposition. *See* Mot. at 24 n.12.

The court cannot deem the magistrate judge's findings clearly erroneous or contrary to law on the basis of documents and arguments not presented to her. Because Global argues that Cova's testimony bears on other documents that were at issue in the underlying motion, *see id.* at 24, the court REFERS this matter to the magistrate judge to consider whether these new arguments and evidence establish the necessary factual basis "to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." *See In re Grand Jury Investigation*, 974 F.2d at 1075; *Lopez v. United States*, No. 15CV00180 JAH-WVG, 2017 WL 875594, at *3 (S.D. Cal. Mar. 6, 2017) (declining to exercise discretion to consider new argument but remanding to magistrate judge to consider in the first instance). To the extent Global's motion is unaffected by this new evidence, it is DENIED.

B. Order Granting Aerojet's Motion to Compel

On February 1, 2019, Aerojet moved to compel Global's production of several documents, arguing Global had "improperly invoked attorney-client privilege and work product, relevance, and confidentiality objections." Aerojet MTC, ECF No. 151, at 2; Jt. St. re Aerojet Mot., ECF No. 178, at 8, 11. As follows, the court addresses the specific categories of documents Aerojet requested, the magistrate judge's ruling and this court's resolution of the motion for reconsideration.

1. Global's Investigation of Aerojet's Claim

In response to Aerojet's request that Global produce "the entirety of [its] claim file (which includes all investigative material)," Global withheld "a substantial part of the file" on the basis of attorney-client privilege and work product protections, producing a privilege log containing 195 entries asserting such protections. Jt. St. re Aerojet Mot. at 8; Privilege Log, Jt. St. re Aerojet Mot., Ex. 7, ECF No. 178 at 60–73. Accordingly, Aerojet sought to compel production of four sets

of purportedly privileged documents concerning Global's investigation: (1) Global's internal investigation communications, (2) draft documents created by Global, (3) Global's communications with the other defendant insurers, and (4) materials involving Condon & Forsyth ("C&F") personnel,[5] providing further breakdowns within these categories in its briefing. Jt. St. at 12 & n.5.

### a. Global's Internal Communications

In challenging Global's invocation of the privilege, raising a question of substantive law, Aerojet argued in a four-sentence footnote that "New York and/or New Jersey law . . . apply to Global's communications with outside counsel and Global's internal communications" because "Global representatives were located in New Jersey and Condon & Forsyth attorneys working on Aerojet's claim were located in New York." Jt. St. re Aerojet Mot. at 12 n.6. Global responded in a footnote that it "rel[ies] on California, New Jersey, and New York law—none of which appear to be in conflict on the issue of attorney-client privilege." *Id.* at 21 n.22 (citation omitted). Neither party applied a choice of law analysis.

Citing Global's claims manual, which in Aerojet's view provides claims investigations are conducted by claims representatives and claims attorneys serving "the same [role] – to handle claims" but not "to provide legal advice," Aerojet argued Global cannot shield from production internal communications involving Tamer Ahmed, Anthony Murphy, Sharon Holahan and Stephen Walsh, all of whom are attorneys employed by Global. *Id.* at 13−14. Aerojet argues Walsh, Global's Group General Counsel, "appears to have little to no role in the claim," and Ahmed, Murphy and Holahan cannot be considered "in-house attorneys" conducting coverage analysis because they each were "claims handlers" whose proclaimed coverage analysis on Global's behalf "belies the provisions of the claims manual." *Id.* at 14; *but see* Murphy Dep., Jt.
/////

---

[5] As discussed below, Global retained C&F, and, specifically, Katherine Posner of C&F, within days of Aerojet's filing its initial request for indemnity. C&F and Posner have continued to represent Global throughout this litigation.

St. re Aerojet Mot., Ex. 2 (Sealed[6]) at 211:19−215:13 (Global's Rule 30(b)(6) witness, Anthony Murphy, discussing manual in context of Aerojet claim).

Global countered that its in-house counsel's internal communications, including those involving non-attorneys, concerned Global's coverage investigation, which commenced upon Aerojet's filing its claim and thus are protected by the privilege. *Id.* at 22−24. In support, Global cited Murphy's Rule 30(b)(6) testimony that from the outset Global viewed Aerojet's claim as "a coverage case" that did not involve normal claims handling procedures and instead led to Global's immediately assembling in-house counsel to provide coverage analysis. *Id.* at 22 (citing Murphy Dep. at 75:12−15, 94:11−13, 207:12−18, 211:12−213:8); *see also* Jt. St. re Aerojet Mot. at 9−10; Murphy Decl., Jt. St. re Aerojet Mot., Ex. 3, ¶¶ 10−11 (stating, "[a]t the outset, Global viewed Aerojet's claim as a coverage case that required in-house coverage counsel and . . . I was assigned . . . to investigate and analyze the claim to determine whether it was covered by the applicable polices and to provide a coverage recommendation to the coinsurers."). Global also cited the declaration of Ahmed, Jt. St. re Aerojet Mot. at 23, in which Ahmed stated, "[a]t the conclusion of [Global's August 24, 2015 call with Aerojet], it was understood that Aerojet's 'claim' presented significant coverage issues" and "did not require normal claims handling (*i.e.*, a claims representative or claims attorney to handle the defense of the claim)," and Ahmed "became part of the Global coverage 'team,' the in-house counsel who were involved in looking at the coverage issues presented," Ahmed Decl., Jt. St. re Aerojet Mot., Ex. 4, ¶¶ 6−7.

          b.      <u>C&F Documents</u>

Aerojet argued that because Global engaged C&F one business day after Aerojet tendered its claim, Global's claims manual allows it to retain counsel to conduct claims investigations, and "[C&F], not Global, determined what documents and information" Global requested during its investigation, "[C&F] lead [sic], and was the principal driver, of Global's claims investigation," did not provide legal advice concerning coverage, and all C&F materials

---

[6] Global did not oppose Aerojet's request to seal this document. *See* ECF No. 179. Because neither party asks the court to revisit the magistrate judge's determination on the sealing request here, the court also assumes without deciding that sealing was appropriate.

8

predating Global's October 4, 2016 denial of Aerojet's claim are therefore non-privileged. Jt. St. re Aerojet Mot. at 17−18. Aerojet also argued that C&F necessarily conducted a claims investigation because Global did not secure a written engagement letter from C&F or follow Global's claims manual procedures in engaging C&F to purportedly serve as coverage counsel. Jt. St. re Aerojet Mot. at 18.

Global disputed Aerojet's interpretation of the claims manual and argued all evidence shows Global retained C&F as coverage counsel on behalf of itself and its coinsurers immediately after Aerojet submitted its claim and no evidence supports Aerojet's argument that C&F functioned as a "routine claims handler." *Id.* at 26−28 (citing Murphy Dep. (Sealed) at 182:19−183:14, 196:4−9, 201:19−202:4; Ahmed Decl. ¶ 7); *see also* Market Report, Jt. St. re Aerojet Mot., Ex. 5 (Aug. 25, 2015 Global market report regarding Aerojet claim, "We have engaged the services of Katherine Posner of Condon and Forsyth, New York, NY to provide us with a coverage opinion"). In his declaration, Murphy states that on August 24, 2015, Global's Claims Director authorized Murphy to retain C&F "to serve as outside coverage counsel for all insurers on the policies" and "[f]rom August 24, 2015 on, Condon & Forsyth's sole role was to provide legal advice, opinions, and counsel to Global and its co-insurers relating to coverage and litigation," with the scope of C&F's representation confined to legal advice and its communications concerning Aerojet's claim "made in confidence and for the purpose of obtaining legal advice and opinion relating to coverage and litigation." *Id.* ¶¶ 6, 13−15.

    c. The Magistrate Judge's Ruling & Global's Motion for Reconsideration

Without differentiating between Global's internal investigation and C&F's investigation, the magistrate judge granted Aerojet's motion in a section of her order titled, "Aerojet is Entitled to Information Concerning Global's Investigation." Order at 7−8. This portion of the magistrate judge's order referred to her prior order finding that Aerojet was entitled to question Global's Rule 30(b)(6) witness on "topics related to Global's communication with outside counsel . . . during the claims investigation process," *id.* at 7 (citing ECF No. 137 at 4−7); in a single sentence, the magistrate judge also addressed Murphy's declaration stating Global viewed Aerojet's

claim as presenting a coverage issue from the outset. *Id.* This was the only evidence the magistrate judge cited. As to Murphy's declaration, the magistrate judge concluded, "Global's assertion that it was more skeptical than usual that coverage existed does not remove it from the presumption that the investigation of the claim prior to denial was in fact just that: an investigation, and not preparation for litigation." *Id.*

Having carefully reviewed her order, the court is unable to determine how the magistrate judge weighed the relevant evidence, or which jurisdiction's law she applied. The magistrate judge did not expressly resolve the choice of law issue Aerojet raised, as she cited California law in addressing the legal standards governing the privilege, but cited only a single authority, a New Jersey Supreme Court decision, in ruling on Aerojet's motion to compel production of Global's investigation information. *See* Order at 3−4, 7 (latter portion citing prior order quoting *Payton v. New Jersey Tpk. Auth.*, 148 N.J. 524 (1997)). It is possible the magistrate judge found Aerojet did not meet its burden in invoking New Jersey or New York law. *See McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989) ("The burden is on the party seeking to invoke foreign law; California applies its own rule of decision unless a party litigant properly invokes the law of a foreign state."); *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1465 (Cal. Ct. App. 2007) ("The party arguing that foreign law governs has the burden to identify the applicable foreign law, show that it materially differs from California law, and show that the foreign law furthers an interest of the foreign state."). While there is certainly support for such a finding, as Aerojet raised the choice of law issue in a footnote and made no attempt to apply the controlling test, this conclusion is inconsistent with the magistrate judge's reliance on a single New Jersey decision in resolving the motion before her. *See* Order at 7. That inconsistency might be resolved if she found no difference between California, New Jersey and New York law, though she does not explain as much, leaving the framework for the analysis she applied unclear. Alternatively, she may have determined New Jersey law, but not California or New York law, applies, though the court cannot discern the basis for her decision, if that is indeed what she decided. The court thus cannot be clear on the standards the magistrate judge applied in resolving the motion.
/////

For example, if the magistrate judge applied California law, she did not clearly apply the rule set forth in her recitation of legal standards, which provides that the party invoking the privilege bears the burden of "establish[ing] the preliminary facts necessary to support its exercise—, i.e., a communication made in the course of an attorney-client relationship" and, once established, requires "the opponent of the claim of privilege . . . to establish the communication was not confidential or that the privilege does not for other reasons apply." *See* Order at 3 (quoting *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (2009)). Similarly, the magistrate judge's sole citation to Murphy's declaration with no acknowledgement of other evidence of record that presumably bears on the motion sheds no light on whether the magistrate judge deemed such evidence immaterial or discounted it for other reasons.

While the magistrate judge's logic may be sound, the lack of full explanation in her order prevents this court from exercising its role in reviewing her decision. Because Aerojet's motion was submitted without oral argument, the court cannot turn to a hearing transcript for further guidance as to the magistrate judge's assessment of the law, the parties' respective burdens and the record before her. *See* ECF No. 180. Having carefully considered its options, the court REFERS this matter back to the magistrate judge to explain the law she applied, the evidence she considered, and to more fully explain the reasoning underlying her decision. *See Sedlacek v. Morgan Whitney Trading Grp., Inc.*, 795 F. Supp. 329, 332 (C.D. Cal. 1992) (referring motion to back to magistrate judge upon finding "lack of clarity" as to order).

2.  Global's Draft Documents

In its motion to compel, Aerojet argued it is entitled to production of documents underlying: (1) Global's privilege log entries identifying thirteen draft market reports to the insurer defendants, most of which were authored by Ahmed and two of which had no identified author; (2) three entries identifying draft communications to Aerojet, for which no author was identified; (3) three draft communications for which no further description or author was provided; and (4) a draft request for documents and a draft reservation of rights letter. Jt. St. at 14−15. Aerojet argued the market reports were part of Global's normal claims handling practice and authored by Ahmed, whom Aerojet had already argued "is a claims handler," and therefore not privileged. *Id.* at 15.

Aerojet further argued that Global's draft communications with Aerojet constituted normal business activity, and with no author listed, were not privileged. *Id.* Aerojet argued the draft communications for which Global provided no further information were not privileged. *Id.* Finally, Aerojet argued the draft requests for production and reservation of rights letters were normal claims activities authored only two weeks after Aerojet tendered its claim and thus were not privileged. *Id.*

Global responded that the draft documents at issue "contain legal opinion [sic] and counsel's mental impressions about coverage issues that were not to be included in the final versions of these documents" and are thus protected by the privilege. *Id.* at 24.

Without specifically discussing these documents, and without discussing the difference between the attorney-client privilege and the work product doctrine and how those doctrines bear on her analysis, the magistrate judge granted Aerojet's motion. *See* Order at 7. This issue is also REFERRED back to the magistrate judge to explain the law she applied, the evidence she considered and the basis for her ruling.

3. Global's Communications with Co-Insurers

Arguing neither Global nor C&F represented Global's co-insurer defendants prior to initiation of this suit, Aerojet argued it is entitled to production of all communications identified in Global's privilege log involving either co-insurers' representatives or possible co-insurers' representatives, all of which concern "[c]ommunication with counsel regarding coverage analysis and draft disclaimer." Jt. St. re Aerojet Mot. at 16; *see* Privilege Log.

Global responded that its Rule 30(b)(6) witness, Murphy, testified that Global "retain[ed] [C&F] on behalf of all the insurers," and, regardless, Global "shared a common interest with [the other insurers] in determining whether or not Aerojet's claim was covered," rendering the discussions privileged. *Id.* at 24−25 (former portion quoting Murphy Dep. (Sealed) at 143:17−18; other citations omitted).

Without specifically discussing the evidence or arguments raised by either party, the magistrate judge granted Aerojet's motion. *See* Order at 7. The issue also is REFERRED back to the magistrate judge to explain her analysis, the evidence she considered and the basis for her ruling.

### 4. Communications with Global's Other Insureds

Aerojet also sought production of "communications with Orbital and other Global insureds who may have made claims in connection with the E-17 and Orb-3 incidents giving rise to Aerojet's claim." Jt. St. re Aerojet Mot. at 8, 18. Citing Global's defense and counterclaims, which Aerojet framed as "Global [] assert[ing] that it first learned of the E-17 and Orb-3 incidents (and the nature of Orbital's potential claims against Aerojet) when Aerojet gave it notice of Orbital's desire to settle in August 2015," thus placing Global in an "untenable" position, and Global's argument it expected cross-waivers in Aerojet's agreement with Orbital would preclude a claim for damages, Aerojet argues it is entitled to these communications to determine whether Global is "feigning surprise" and whether Global treated other insureds with cross-waivers claims the same way. *Id.* at 18−19.

Global argued Aerojet misrepresented its defenses and counterclaim concerning notice, as Global's answer expressly stated that Global learned of one of the two incidents underlying Aerojet's claim in October 2014, nearly a year before Aerojet submitted the claim. *Id.* at 28. Furthermore, Global argued its "untenable" position was caused by Aerojet's demand for an immediate settlement, not its delayed notice of the incident to Global. *Id.* Global did not respond to Aerojet's argument concerning the cross-waivers. *See id.* Global also argued Aerojet's request was overly broad and Global's compliance "would be extremely burdensome, if not virtually impossible," as it would require insurers to search for claims "relate[d] to either" incident underlying Aerojet's claim, with no simple means of conducting such a search. *Id.* at 28−29. Finally, Global cited the "private" nature of insureds' information and the privacy risks to non-parties. *Id.* at 29.

The magistrate judge granted Aerojet's motion, finding "when Global had knowledge of the incidents is relevant to a defense, and it is proportional in light of the size and scope of this case." Order at 8. She also found Global had not explained why the stipulated protective order entered in this case would not adequately protect the privacy interests of third parties. *Id.*

/////

Global now contends the magistrate judge misread Global's allegations in granting this motion. Mot. at 20. The magistrate judge generally cited page 17 of Global's then-operative answer, setting forth Global's affirmative defenses, Order at 8, which includes Global's allegations that Aerojet did not notify Global of the May 22, 2014 E-17 incident until August 21, 2015 when it first notified Global of its dispute with Orbital. ECF No. 65 ¶¶ 104−05.[7] As Global noted in the joint statement and in its current motion, Global also alleged elsewhere in its counterclaims, "[o]n October 30, 2014, Plaintiff's insurance broker contacted Global to advise of the Orb-3 incident." Jt. St. re Aerojet Mot. at 28 (citing ECF No. 154 ¶ 152); Mot. at 20 (citing ECF No. 65 ¶ 138). Global also argues the magistrate judge did not address the burdens complying with such a request would impose on Global. Mot. at 20−21.

In finding that Global claims to have first learned of the Aerojet-Orbital incidents in August 2015 "and that late notice put Global in an 'untenable' position," the magistrate judge misapprehended Global's defense. *See* Order at 8. While this conclusion weighs in Global's favor, the magistrate judge's finding here remains sound, that Aerojet is entitled to know when Global first learned of the underlying dispute, *id.*, particularly in light of Aerojet's argument that "notice of the background information giving rise to the claims that orbital [sic] sought to bring against Aerojet" and "other insureds' claims . . . [arising] out of the same incident" are relevant to Global's claim of surprise, Jt. St. re Aerojet Mot. at 19. Moreover, while Global argues "insurers do not track or file information based on discrete incidents but, rather, by individual insured," making it "virtually impossible" for Global to identify the information sought, this explanation is inadequate. *See* Jt. St. re Aerojet Mot. at 29; Mot. at 20−21 (arguing magistrate judge's order would require Global "to search for unnamed insureds under unspecified first party and third party policies of insurance and review potentially thousands of claims for those that could be construed as relating to the E-17 and Orb-3 Incident [sic]"). None of these complaints adequately address why Global is unable to conduct targeted searches of electronic records or have a neutral IT expert conduct

/////

---

[7] Global's operative answer includes the same language. ECF No. 154 ¶¶ 102−03.

14

necessary searches, even if it does not organize claims by incident. On this issue, the court DENIES the motion.

### 5. Global's Claims Manual Documents

Aerojet moved to compel production of documents referred to in Global's claims manual, arguing these documents "are part of Global's claims manual and, hence, part of Global's claims handling practices." Jt. St. re Aerojet Mot. at 20. Aerojet also argues Global has accused Aerojet of fraudulently submitting and modifying claims, implicating Global's anti-fraud procedures. *Id.* Finally, Aerojet argues it is entitled to know "how much (or little) Global was paid to handle claims – implicating Global's motive in failing to conduct a complete investigation pre-denial." *Id.*

Global agreed to produce four of the five documents sought, but objected that the fifth, "the Claims Administration Fees and Expenses schedule," was irrelevant because its "normal claims handling practices did not apply to Aerojet's claim." *Id.* at 29.

The magistrate judge granted Aerojet's motion, concluding, "Global's heightened skepticism regarding coverage does not remove it from the ordinary legal rules surrounding insurance claim investigations. The Claims Administration Fees document goes to Aerojet's claim that the investigation was improperly handled; it is therefore discoverable . . . ." *Id.* at 8−9.

Because the magistrate judge's basis for ruling as she did on the privilege issue generally is unclear to the court, as explained above, so too is her reasoning on this request, which relies on her privilege ruling. *See id.* at 8 ("This argument is not persuasive, for the same reason it was not persuasive as to attorney-client privilege . . . ."). The matter also is REFERRED back to the magistrate judge for further explanation.

### 6. Global's Joint Defense Agreement

Finally, Aerojet sought the Global defendants' joint defense agreement, arguing it "is relevant to Global's erroneous claims of privilege during the claim investigation phase of this matter" as it "may shed light on which non-Global defendants engaged [C&F] and when, which goes directly to Global's claim that the insurers hired [C&F] from the outset and Global's assertion of the common interest doctrine." Jt. St. re Aerojet Mot. at 20−21.

Citing documents and sworn testimony that Global retained C&F on behalf of all insurers immediately after Aerojet submitted its claim, Global argued the joint defense agreement is irrelevant. *Id.* at 30; *see also id.* at 17 (Aerojet acknowledging Global retained C&F one day after Aerojet tendered its claim). Moreover, Global argued the joint defense agreement under which C&F was retained as counsel for all insurers did not change the attorney-client relationship or affect the privileged nature of C&F's communications with the insureds. *Id.* at 30.

The magistrate judge granted Aerojet's motion, "again reject[ing] [Global's] theory that pre-denial investigation documents are privileged or otherwise exempt from discovery because of the special circumstances of Aerojet's claim." Order at 9.

The magistrate judge's ruling here also relies on her findings regarding the privilege generally. Thus, this issue as well is REFERRED back to the magistrate judge for further explanation.

IV. CONCLUSION

Global's motion for reconsideration of the magistrate judge's order denying Global's motion to compel is DENIED, except for the portion of that motion concerning Cova's new testimony, which is REFERRED back to the magistrate judge to address in the first instance. As to Global's motion for reconsideration of the magistrate judge's order granting Aerojet's motion to compel, the portion of the order concerning communications with Global's other insureds is DENIED and the balance of the matter is REFERRED back to the magistrate judge to more fully explain the law she relies on, the evidence she considered and the basis for her decisions.

IT IS SO ORDERED.

DATED: September 23, 2019.

_____
UNITED STATES DISTRICT JUDGE