UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEROJET ROCKETDYNE, INC., | No. 2:17-cv-01515 KJM AC |
| Plaintiff, | |
| v. | ORDER |
| GLOBAL AEROSPACE, INC., et al., | |
| Defendants. | |

This discovery dispute is back before the undersigned following review by United States District Judge Kimberly J. Mueller. ECF No. 233. Defendant Global's motion to compel, ECF No. 141, and plaintiff Aerojet's motion to compel, ECF No. 151, were initially referred to the undersigned magistrate judge pursuant to E.D. Cal. R. 302(c)(1). Both motions were taken under submission without oral argument. ECF No. 180. An order resolving both motions was filed on March 13, 2019, ECF No. 189, and defendant Global sought reconsideration by the District Judge, ECF No. 197. On September 24, 2019, Judge Mueller referred a portion of Global's motion (ECF No. 141) back to the undersigned to consider new evidence in the first instance, and referred a portion of Aerojet's motion (ECF No. 151) for a more detailed explanation of the basis for the original ruling. ECF No. 233 at 16. For the reasons stated below, the undersigned will again DENY the referred portion of Global's motion and again GRANT the referred portions of Aerojet's motion.

# I. Background

This is a liability insurance coverage action between plaintiff Aerojet Rocketdyne, Inc. ("Aerojet") and multiple of its insurers (collectively, "Global"), arising out of a settlement agreement between Aerojet and Orbital Sciences Corporation ("Orbital"), a third-party company. ECF No. 95 at 8. As reviewed in numerous prior orders, this case stems from two 2014 incidents in which engines Aerojet provided to third party Orbital failed, leading to a $50 million settlement between Aerojet and Orbital for which Aerojet sought insurance coverage from Global. See ECF No. 149, 154.

Since its inception, this case has involved numerous discovery disputes. See, ECF Nos. 61 (motion to compel by Aerojet); 108 (motion for additional depositions by Global); 130 (motion for protective order by Global); 141 (motion to compel by Global); 151 (motion to compel by Aerojet); and 182 (motion for additional depositions by Global). On March 13, 2019, the undersigned resolved ECF Nos. 141 and 151 by denying Global's motion in full and granting Aerojet's motion in full. ECF No. 189. Global moved for reconsideration of this order on March 27, 2019. Fact discovery closed while the reconsideration motion was pending, on June 15, 2019. ECF No. 185. On September 24, 2019, District Judge Mueller denied Global's motion for reconsideration in part, and referred portions of each underlying discovery motion back to the undersigned for further review. ECF No. 233.

# II. Global's Motion to Compel, ECF No. 141

## A. Overview

On January 30, 2019, Global moved to compel production of several documents, seeking in camera review to determine whether Aerojet properly invoked the attorney client privilege and work product doctrine. Global Mot. to Compel, ECF No. 141. Specifically, Global sought the unredacted minutes of Aerojet's Board of Directors and Authorization Committee meetings and documents provided to those committees for their meetings, which Aerojet produced with redactions asserting the attorney-client privilege. Acknowledging that portions of these documents may be subject to a valid claim of privilege, Global requested in camera review of the documents, arguing such review "is plainly available to federal courts sitting in diversity and

applying the substantive privilege law of California." ECF No. 177 (Joint Statement) at 7−8 (footnote omitted), 18.

Aerojet argued the redactions were proper and that it was plain from the documents and Aerojet's privilege log that the privilege had been properly asserted. See, e.g., id. at 27 ("The Agenda indicates this was not an ordinary board of directors meeting, but a special one called to specifically discuss, seek legal advice, and develop a legal strategy related to settlement."), 28 (arguing "[l]ess than one full paragraph in a 73 page package of board minutes" was redacted in Exhibit L; two paragraphs redacted in Exhibits M and N; one paragraph redacted in Exhibit S; with redactions applied only where Aerojet's counsel "provided legal advice to the Board"); but see id. at Ex. L (redacting one paragraph of 7 page, not 73-page, document).

Applying federal law, the undersigned determined that Aerojet had sufficiently substantiated the privileged nature of the documents and that in camera review was not necessary. The court specifically rejected Global's contention that a single proffered instance of overzealous redaction by Aerojet provided a reasonable basis to believe that in camera review would reveal evidence of unprivileged information. In moving for reconsideration, Global argued in part that it had become aware of "[a] more compelling example of the heavyhanded nature of Aerojet's redactions" on February 28, 2019, when Global re-deposed Aerojet's witness Peter Cova. Id. at 23. Global indicated that Cova's testimony had not yet taken place when the parties filed their joint statement, but it did take place before the issuance of the undersigned's order. ECF No. 197 at 23. Judge Mueller referred the matter back to the undersigned to consider in the first instance whether Mr. Cova's testimony requires a different result. ECF No. 233 at 6, 16.

B. Applicable Law

The application of federal law to the propriety of in camera review is not in dispute.[1] As stated in the undersigned's original order, determining the propriety of in camera review requires a two-step process:

---

[1] As Judge Mueller noted, neither party objected at the reconsideration stage to the undersigned's initial determination that federal law applied to the procedural issue of in camera review. ECF No. 233 at 4 n. 3. Accordingly, the choice of law issue is settled as to this topic.

3

> In United States v. Zolin, the Supreme Court held that a court may conduct an in camera review of privileged materials to determine whether the crime-fraud exception applies, and established a two-step analysis for determining whether in camera review is appropriate. First, the party seeking in camera review must make a minimal showing that the crime-fraud exception could apply to the privileged materials. United States v. Zolin, 491 U.S. 554, 572 (1989). If this initial hurdle is overcome, then the district court has the discretion to conduct an in camera review. Id. This discretionary decision turns on "the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." Id. In In re Grand Jury Investigation, the Ninth Circuit held that the two-step Zolin process "applies equally well when a party seeks in camera review to contest assertions of [ ] privilege." In re Grand Jury Investigation, 974 F.2d 1068, 1074 (9th Cir. 1992).

Fourth Age Ltd. v. Warner Bros. Digital Distribution, No. CV 12-09912 AB (SHX), 2014 WL 12584447, at *4 (C.D. Cal. Oct. 9, 2014).

    C.   Impact of Cova's Testimony on Propriety of In Camera Review

The February 28, 2019 deposition testimony of Peter Cova does not alter the undersigned's conclusion that in camera review of Aerojet's document redactions is unwarranted. In his testimony, Mr. Cova specifically discussed a PowerPoint slide, Deposition Exhibit 88, which is redacted except for the title ("AR Antares Counter Offer to Orbital (BAFO)") and what appears to be headings of a chart, labeled "Orbital Demand," "AR Offer to Orbital (8/18/14)," "Orbital Counter (8/20/14)"and "AR to Orbital Proposal." ECF No. 197-3 at 4. At the deposition, when asked about the source of the information under each heading, Mr. Cova stated "I believe the reason why this chart and the next chart are redacted is this is attorney-client privileged communication . . . It's a work product." ECF No. 197-4 at 4-5. After Mr. Cova's attorney directed him to answer as to the source only, Mr. Cova testified that he copied and pasted information from "a set of Powerpoint charts that listed the items of – under dispute and their position on those items." Id. at 5. He then "in parallel listed Aerojet's offer or counteroffer to that position." Id. at 5-6. Global counsel asked, "I just want to make sure I understand your testimony with regard to the information that you pasted into the Orbital demand. Are you – was

4

the source a Powerpoint presentation prepared by Orbital that was communicated to you and others at Aerojet?" Id. at 6. Cova replied, "To the best of my knowledge, yes." Id.

Based on this testimony, Global argues that Cova's "testimony leaves no room for doubt that the PowerPoint portion of Deposition Exhibit 88 contains information that is not privileged, but in fact includes information that was communicated between Aerojet and Orbital." ECF No. 197 at 24. In a footnote, Global states that Deposition Exhibit 88 will be the subject of a follow-up motion to compel (because it was not a part of the original motion to compel at issue here), and that Aerojet has represented that it was conducting a search for the source document identified by Mr. Cova and any similarly situated documents. Id. at n. 12. A review of the docket indicates that no such motion was filed, and discovery has closed.

In any case, the court does not find that Mr. Cova's testimony "support[s] a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." See In re Grand Jury Investigation, 974 F.2d at 1075. Cova's testimony indicates that one column of a chart characterized as attorney work product contained information it received from Orbital. Even if some data in the chart came from unprivileged sources, Cova's testimony establishes that Exhibit 88 was a compilation of communications he assembled with the help of Aerojet's in-house counsel, Brian Sweeney, in order to communicate to the Aerojet Board. ECF 197, p. 4 at 238:20-239:3 ("I was involved, along with Steve and, and Brian Sweeney and others, as we prepared and communicated Aerojet offers, negotiated offers with Orbital and so...we compiled sort of the evolution of, of the offer—counteroffer and put in on the slides for the board to review."). It is arguable that the chart as a whole was entitled to protection even if every fact or number it contained was not independently privileged. Even if the court were to conclude that Exhibit 88 contained some information that was improperly redacted, however, that would not support an inference that Aerojet's redaction practices are so universally "heavyhanded" that the redactions at issue on Global's motion to compel cannot be trusted. For one thing, the document at Exhibit 88 *was not at issue* in the motion to compel. It has no direct bearing, and little circumstantial relevance, to the redactions that are in issue. Moreover, like the previously tendered example of inconsistent redaction, Cova's testimony is simply not the

smoking gun Global makes it out to be. It is insufficient to support a reasonable belief that in camera inspection of the documents at issue may reveal evidence that information in them is not privileged.

Having considered the new evidence provided by Global, the court again concludes that in camera review is not warranted. Global's motion to compel (ECF No. 141), to the extent it was referred back to the undersigned by the District Judge, is DENIED.

### III. Aerojet's Motion to Compel, ECF No. 151

A. Overview

The undersigned previously granted Aerojet's motion to compel the production of several categories of documents: (1) information concerning Global's investigation of Aerojet's claims including allegedly privileged documents, (2) information related to other Global insureds, including Orbital, (3) claims manual file documents, and (4) joint defense agreements between the defendants. ECF No. 189 at 6-9. Judge Mueller referred the motion back to the undersigned to "explain the law [] applied, the evidence [] considered and to more fully explain the reasoning underlying [the] decision" as to each issue except Global's communication with other insureds, on which reconsideration was denied. ECF No. 233 at 11, 13. Judge Mueller also asked the undersigned to specifically address Aerojet's demand for Global's draft documents, including those underlying: (1) Global's privilege log entries identifying thirteen draft market reports to the insurer defendants, most of which were authored by Ahmed and two of which had no identified author; (2) three entries identifying draft communications to Aerojet, for which no author was identified; (3) three draft communications for which no further description or author was provided; and (4) a draft request for documents and a draft reservation of rights letter. Id. at 11. Finally, Judge Mueller asked the undersigned to clarify the prior order on Aerojet's motion with respect to Global's communications with co-insurers. Id. at 12.

B. Aerojet is Entitled to Information Concerning Global's Investigation

Aerojet seeks documents relating to Global's initial claims investigation, including the pre-denial investigation file of outside counsel Condon & Forsyth; Global claims that the files are protected from discovery by attorney-client privileged and/or work product protection. ECF No.

178 at 11-17. For the reasons now explained, the court confirms its previous conclusion that these documents are not privileged or protected, and that Aerojet is entitled to a full production.

1. Applicable Law on Attorney Client Privilege

At the outset, the court clarifies that it applies the law of New Jersey (as opposed to New York or California) to communications with outside counsel and to Global's internal investigative communications. A federal district court sitting in diversity applies the conflict rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 497 (1941). California uses the "governmental interest" approach, in which: "[T]he forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." Hurtado v. Superior Court, 11 Cal.3d 574, 581 (1974). In making this determination, the court considers the state of domicile of the corporation asserting the privilege and where the communications took place. Connolly Data Sys., Inc. v. Victor Techs., Inc., 114 F.R.D. 89, 91-92 (S.D. Cal. 1987).

In this case, Global representatives working on Aerojet's claim were located in New Jersey and Condon & Forsyth attorneys working on Aerojet's claim were located in New York, New York. ECF No. 134 at 24, n. 11; ECF No. 178 at 12, n. 6. Global is a Delaware corporation with its principal place of business in Parsippany, New Jersey. ECF No. 154 at 4. Because Global is headquartered in New Jersey and much of the communication at issue took place at least in part in New Jersey, the court finds New Jersey has the greatest interest in application of its privilege laws to the privilege at issue in this motion.[2] Nonetheless, the court notes that the parties did not appear to dispute the choice of law question, although Aerojet also cited California

---

[2] California privilege law was applied in an earlier order regarding a different discovery dispute. See ECF No. 100 at 3-4. The privilege at issue in that dispute was being asserted by Aerojet, an Ohio corporation with its principal place of business in Rancho Cordova, California. See ECF No. 149 at 4. California choice of law principles dictated the application of California privilege law to the documents at issue there, because California had the greatest governmental interest in applying its privilege law to those claims. See Connolly Data Sys., 114 F.R.D. at 91-92. Here, Global is asserting the privilege, and California choice of law dictates the application of New Jersey law, as discussed above.

7

law in the joint statement; the parties agreed that there was no apparent conflict between the laws of these states. ECF No. 178 at 12, n. 6 and 21, n. 22. Accordingly, although the court clarifies that New Jersey provides the applicable law of privilege, it also notes that the choice of law is immaterial to the outcome.

The party asserting attorney client privilege bears the burden to prove it applies to any given communication. Horon Holding Corp. v. McKenzie, 341 N.J. Super. 117, 125 (App. Div. 2001). New Jersey has "repeatedly recognized that the [attorney-client] privilege is 'limited to communications made to the attorney in his professional capacity.'" United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 562 (App. Div. 1984) (quoting Metalsalts Corp. v. Weiss, 76 N.J.Super. 291, 297 (Ch. Div. 1962)). "Where the attorney is not providing legal advice, but is merely performing "nonlegal duties" *such as conducting an investigation*, the attorney-client privilege otherwise available . . . will be deemed inapplicable." Paff v. Div. of Law, 412 N.J. Super. 140, 151–52 (App. Div. 2010) (emphasis added), see also ECF No. 137 at 5 (quoting Payton v. New Jersey Tpk. Auth., 148 N.J. 524, 550–51 (1997)). New Jersey courts emphasize the importance of attorney-client privilege but also construe it strictly: "[s]ince the recognition of the privileged communication between attorney and client rests in the suppression of the truth the privilege should be strictly construed in accordance with its object. The privilege is an anomaly and ought not to be extended. The rule of privilege, having a tendency to prevent the full disclosure of the truth, ought to be construed strictly." Paff, 412 N.J. Super. at 150–51 (internal quotations and citations omitted).

      2.    <u>Global's Pre-Denial Coverage Investigation Documents are Not Privileged</u>

The undersigned remains unpersuaded by Global's attempt to turn its claim investigation process into a coverage dispute to which privilege attaches on grounds that coverage for Aerojet was immediately doubtful. See ECF No. 178 at 22. To support its contention regarding its in-house counsel's internal communications, Global submitted a declaration from Anthony Murphy, Vice President for Global in its claims department, which states that from "the outset, Global viewed Aerojet's claim as a coverage case that required in-house coverage counsel" and because Aerojet's claim was "purely [a] coverage case, Global anticipated the potential for litigation

should it determine that there was no coverage." ECF No. 178 at 42, Murphy Dep. 55:22-23. Global also submitted the declaration of Global claims department attorney Tamar Ahmed, in which Ahmed stated, "[a]t the conclusion of [Global's August 24, 2015 call with Aerojet], it was understood that Aerojet's 'claim' presented significant coverage issues" and "did not require normal claims handling (i.e., a claims representative or claims attorney to handle the defense of the claim)," and Ahmed "became part of the Global coverage 'team,' the in-house counsel who were involved in looking at the coverage issues presented," ECF No. 178 at 46.

Global's position is not persuasive. It is clearly established that an insurer's claims investigation constitutes a standard business activity to which no attorney-client privilege attaches. Payton, 148 N.J. at 550–51. This is true even when coverage litigation ultimately results from the claims handling work. Id. Global's assertion that it was more skeptical than usual about the existence of coverage does not negate the presumption that the investigation of the claim prior to denial was in fact just that: an investigation, and not actual preparation for litigation. Indeed, Global investigates every claim submitted by an insured, and Global's claims group (Ahmed's group) conducts each investigation. ECF No. 178 at 13. The claims handling group is specifically distinguished from Global's legal group (coverage counsel), which is the in-house department charged with providing legal advice. Id. Global's claims manual, which expressly applies to all claims of all insureds, including third third-party liability claims like the one at issue here, explicitly draws the distinction between the types of attorney groups (claims manual sections 4.3, 6.C, and 8.3 ). Id. Finally, aside from stating generally that Global "always" anticipates litigation, Murphy (again, a member of Global's in house claims group along with Mr. Ahmed) testified that at least as of March 2016, prior to denial, Global had not made a preliminary coverage determination and did not particularly anticipate litigation with Aerojet. Murphy Dep., 237:8-238:17. This record does not support Global's position.

Global has not meet its burden of establishing that attorney client privilege applies. Horon Holding Corp., 341 N.J. Super. at 125. Accordingly, Aerojet is entitled to pre-denial claim investigation documents from Global.

////

### 3. Condon & Forsyth's Pre-Denial Claim Investigation is Not Privileged

The result is no different as to outside counsel, Condon & Forsyth. Global's claims manual permits Global's claims handlers to hire outside attorneys to conduct claims investigations. ECF 178 at 17 (claims manual at section 10.2.), and also to serve as coverage counsel (claims manual at section 8.3). Consistent with that authority, Global's *claims department* engaged Condon & Forsyth on August 24, 2015 —one business day after Aerojet tendered its claim to Global. Id. Once retained, Condon &Forsyth led Global's investigation. Murphy Dep. 55:22-23, 140:13-25. Global and Condon & Forsyth maintain that their work was assessing coverage from the outset, but this contention is undermined by the facts that Global did not secure a written engagement letter from Condon & Forsyth, and generally did not follow its own requirements described in Section 8.3 of the claims manual governing when and how Global engages outside counsel to provide a coverage analysis. Id.

For these reasons, Global has not met its burden as the party asserting privilege to shown that attorney client privilege applies here. See Horon Holding Corp., 341 N.J. Super. at 125. Because the evidence suggests outside counsel was acting to investigate the claim in conjunction with Global's claims group, the rule articulated in Payton applies and Aerojet is entitled to discovery. See Payton, 148 N.J. at 550–51.

### C. Global's Draft Documents

In the original order on Aerojet's motion, the court did not specifically address Aerojet's requests for the documents underlying (1) Global's privilege log entries identifying thirteen draft market reports to the insurer defendants, most of which were authored by Ahmed and two of which had no identified author; (2) three entries identifying draft communications to Aerojet, for which no author was identified; (3) three draft communications for which no further description or author was provided; and (4) a draft request for documents and a draft reservation of rights letter. See ECF No. 178 at 14−15. To the extent attorney client privilege is claimed as to these documents, because the documents were not expressly authored by attorneys (with the exception of Ahmed acting as claims investigator, as discussed above), the analysis is the same as that regarding the claim investigation materials. Market reports, communications to the insured, and

reservation of rights/requests for documents are all part of normal claims handling activities. Murphy Dep. 181:23-183:14; claims manual at section 8.5. They should be treated no differently in discovery than Global's other pre-denial investigative communications.

Global's work product protection argument also fails here. The work product rule "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Admiral Ins. Co. v. U.S. District Court, 881 F.2d 1486, 1494 (9th Cir. 1989). Because it is not a privilege, it is not governed by state law in federal diversity cases. See Fed. R. Evid. 501. "Unlike issues of attorney-client privilege, issues concerning the work-product doctrine are procedural and thus governed by Federal Rule of Civil Procedure 26(b)(3)." Great Am. Assur. Co. v. Liberty Surplus Ins. Corp., 669 F.Supp.2d 1084, 1090 (N.D. Cal. 2009). To qualify for protection under the rule, documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative. In re California Pub. Utils. Comm'n, 892 F.2d 778, 780–81 (9th Cir. 1989). Global cannot meet the threshold requirement for work product protection because its own testimony indicates that the documents were not prepared "in anticipation of litigation." Murphy Dep. 181:23-183:14. The court declines to take Mr. Murphy's general statement that Global is *always* anticipating litigation as evidence that actual, specific litigation was anticipated here within the meaning of the rule. These documents are not protected from discovery by the work product doctrine.

### D. Communications with Global's Co-Insurers

Aerojet seeks production of documents reflected in Global's privilege log including 16 entries involving communications with 5 individuals who work for co-insurers. Murphy Dep. 99:19-105:5; 106:5-114:25. For many of the same reasons discussed above, Global and Condon & Forsythe's communications with Global's Co-Insurers in the pre-denial period are not privileged. Again, there is no engagement letter indicating that Condon & Forsyth had been obtained as coverage counsel for the co-insurers at this point. Murphy Dep. 105:15-20, 145:4-23. The court again rejects Global's proffered position that it is "always" anticipating coverage

litigation as one that would generally create a situation where attorney-client privilege or work product protection may be invoked. ECF No. 25; Murphy Dep. 238:5-6. Aerojet's motion must be granted as to these communications for the same reasons as those articulated above.

### E. Aerojet is Entitled to Claims Manual Documents

Aerojet seeks to compel the remainder of claims manual documents, which have been withheld on grounds of relevance. ECF No. 178 at 20. Aerojet argues these documents are relevant because Global contends that Aerojet improperly submitted and modified its claims, implicating themes of fraud, which implicate Global's anti-fraud procedures. Id. Aerojet also argues that it is entitled to portions of the manual regarding Claims Administration Fees, which go to Global's motive in failing to conduct a complete pre-denial investigation. Id. The undersigned initially agreed with Aerojet.

Global's only objection to this ruling is its argument that "normal claims handling practices did not apply to Aerojet's claims." ECF 197 at 21-22. As discussed above, the undersigned disagrees that the evidence demonstrates the accuracy of this statement. For the reasons discussed above, the court again rules in favor of Aerojet on this point.

### F. Aerojet is Entitled to Global's Joint Defense Agreement

Aerojet seeks production of Global's Joint Defense Agreement, which Global has refused to provide on the basis that it is irrelevant. ECF No. 178 at 20. Aerojet argues the document "is relevant to Global's erroneous claims of privilege during the claim investigation phase in this matter." Id. at 20-21. Global argues again that it did not engage in the normal claim handling process with respect to Aerojet's claim, but instead immediately treated the claim as a potential coverage action. ECF No. 178. As the court has explained above, the undersigned is not persuaded that Global's claim investigation process prior to denial was anything but that – a claim investigation in the ordinary course of business. The evidence provided by Global does not establish that upon tender of Aerojet's claim the issue was immediately treated as a coverage action, as discussed in detail above. Here, again, no privilege exists.

////

////

### IV. Conclusion

For the reasons explained above, the outstanding portion of Global's motion to compel (ECF No. 141) is DENIED. Aerojet's motion to compel (ECF No. 151) is again GRANTED in its entirety.

IT IS SO ORDERED.

DATED: October 7, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE