UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AEROJET ROCKETDYNE, INC.,

Plaintiff,

v.

GLOBAL AEROSPACE, INC., et al.,

Defendants.

No. 2:17-cv-01515-KJM-AC

ORDER

Defendant Global Aerospace, Inc. ("Global")[1] moves, under Federal Rule of Civil Procedure 12(c), for judgment on the pleadings of plaintiff Aerojet Rocketdyne, Inc.'s third cause of action for violations of California Business and Professions Code 17200 *et seq.* ("UCL claim"). In short, Global contends (1) the UCL claim fails as a matter of law because Aerojet is precluded from seeking equitable relief where alternative remedies exist, and (2), as pled, the second amended complaint contains insufficient allegations to satisfy the pleading standards applicable to a claim under the UCL. For the reasons explained below, Global's motion is GRANTED in part and DENIED in part.

---

[1] Consistent with the convention used throughout the court's prior orders, the court refers to Global Aerospace, Inc. ("Global") as the representative defendant on behalf of the multiple members and co-insurers named as defendants in this action. *See, e.g.*, ECF No. 231 at 1 n.1; *see also* SAC ¶¶ 4–33 (listing defendant insurers).

1    I.        BACKGROUND

2             Several of the court's prior orders have thoroughly explained the history of this

3    dispute, *see, e.g.*, ECF No. 231; therefore, the court only briefly summarizes details as relevant

4    here.  This suit arises from two incidents involving non-party Orbital Sciences Corporation and

5    rocket engines Aerojet supplied to Orbital.  Second Am. Compl. ("SAC"), ECF No. 149, ¶ 36.

6    First, on May 22, 2014, Orbital conducted a hot-fire acceptance test of rocket Engine E-17,

7    supplied by Aerojet, at the NASA Stennis Space Center.  *Id.*  During the test, the engine failed,

8    ultimately causing "substantial damage to the engine, the test facility, and ground equipment."

9    *Id.*  Second, on October 28, 2014, at the NASA Wallops Flight Facility, Orbital attempted to

10   launch its "Orbital Antares launch vehicle with cargo destined for the International Space

11   Station."  *Id.*  The launch was powered by two engines supplied by Aerojet.  *Id.*  Fifteen seconds

12   into the launch, the vehicle exploded and impacted near the launch pad, causing destruction to the

13   launch vehicle, its cargo and "significant damage to the launch pad and associated facilities and

14   buildings."  *Id.*

15            Orbital threatened litigation, *id.* ¶¶ 42–43, but on September 21, 2015, Aerojet and

16   Orbital ultimately settled their dispute before litigation ensued, *id.* ¶ 48.  Prior to finalizing

17   settlement, however, Aerojet sought insurance coverage from defendant Global for Orbital's

18   threatened claims.  *Id.* ¶ 44.  Global was aware of the nature of Orbital's claims and that Aerojet

19   would seek indemnification under the Global policy for the value of property damage included in

20   the Orbital settlement.  *Id.* ¶¶ 44–47.  Once Aerojet concluded the Orbital settlement agreement, it

21   "tendered the settlement to Global and requested Global reimburse Aerojet for amounts [] paid to

22   Orbital under the settlement."  *Id.* ¶ 50.  Global denied Aerojet's reimbursement request, claiming

23   the policy does not provide indemnification for "amounts [] paid to Orbital under the

24   settlement[.]"  *Id.* ¶ 51.

25            On June 26, 2017, based on Global's denial of its claim, Aerojet filed suit in Los

26   Angeles County Superior Court, and on July 20, 2017, Global timely removed to this court.  Not.

27   of Removal, ECF No. 1.  The operative second amended complaint makes three claims:

28   (1) breach of written insurance contract, (2) breach of implied covenant of good faith and fair

2

1   dealing, and (3) unfair competition in violation of California Business and Professions Code

2   section 17200 *et seq*. ("UCL claim").  SAC ¶¶ 54–79.  The second amended complaint also seeks

3   various forms of relief, including, *inter alia*, compensatory and consequential damages,

4   restoration, restitution, preliminary and injunctive relief, and disgorgement of monies paid to

5   Global under the policy.  *Id.* at 18, ¶¶ 1–11 (prayer for relief).

6           Here, Global moves for judgment on the pleadings under Federal Rule of Civil

7   Procedure 12(c) as to Aerojet's UCL claim only.  Mot., ECF No. 235.  Aerojet opposes, Opp'n,

8   ECF No. 250, and Global has replied, Reply, ECF No. 253.  On November 22, 2019, the court

9   heard oral argument on the motion.  Counsel Rosemary Loehr and Milton Smith appeared on

10   behalf of Aerojet; counsel Mary Dow and Larry Golub appeared on behalf of Global defendants.

11   Thereafter, the court took the matter under submission for resolution by written order.  The court

12   resolves the motion here.

13   II.      LEGAL STANDARD

14       A.     Rule 12(c)

15           Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the

16   pleadings are closed—but early enough not to delay trial—a party may move for judgment on the

17   pleadings."  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion may raise the defense of failure to state a

18   claim upon which relief can be granted.  Fed. R. Civ. P. 12(h)(2)(B).  The same standard of

19   review applies to motions brought under Rule 12(c) or Rule 12(b)(6), and many of the same rules

20   delineated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550

21   U.S. 544 (2007), apply to Rule 12(c) motions.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4*

22   *Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule

23   12(b)(6) . . . .").

24           "Judgment on the pleadings is properly granted when there is no issue of material

25   fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v.*

26   *Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *Merchs. Home Delivery Serv., Inc. v. Frank B. Hall*

27   *& Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995).  "A dismissal may be affirmed only if it is clear that

28   no relief could be granted under any set of facts that could be proved consistent with the

1  allegations." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (Rule 12(b)(6)) (internal

2  quotation marks and citation omitted).

3        In resolving a motion for judgment on the pleadings, the court "must accept all

4  factual allegations in the complaint as true and construe them in the light most favorable to the

5  non-moving party." *Fleming*, 581 F.3d at 925.  However, the court is not required to accept as

6  true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286

7  (1986), quoted in *Twombly*, 550 U.S. at 555, or "allegations that contradict matters properly

8  subject to judicial notice" or material attached to or incorporated by reference into the complaint,

9  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).  A court's

10  consideration of documents attached to a complaint, documents incorporated by reference in the

11  complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for

12  summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of*

13  *Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

14        B.    Rule 9(b)

15        A claim grounded in fraud must be pleaded with the particularity required by

16  Federal Rule of Civil Procedure 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103

17  (2003).  The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard

18  applies to claims of fraud under the UCL.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

19  Cir. 2009) (citing *Vess*, 317 F.3d at 1102–05).  Aerojet's UCL claim alleges, *inter alia*, that

20  Global conducted "fraudulent business practices within the meaning of Business & Professions

21  Code Section 17200."  SAC ¶ 76; *see also id.* ¶ 73 ("Global's conduct . . . constitute[s] malice,

22  oppression and/or fraud.").  Accordingly, the entirety of Aerojet's UCL claim sounds in fraud and

23  must satisfy the pleading requirements of Rule 9(b), which requires that a party "state with

24  particularity the circumstances constituting fraud or mistake," including "the who, what, when,

25  where, and how" of the alleged fraudulent conduct.[2]  *Vess*, 317 F.3d at 1106 (quoting *Cooper v.*

26        _____

27        [2] At hearing, Aerojet argued Rule 9(b) applies only to the "fraudulent" prong of its UCL
    claim, as the "unlawful" and "unfair" prongs are not grounded in fraud.  This argument is
    unavailing.  In *Kearns*, plaintiff-appellant advanced a similar argument, arguing that because

28  some of his claims were not grounded in fraud, Rule 9(b) should not apply.  567 F.3d at 1125.  In

4

1   *Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  In addition, Aerojet "'must set forth what is false or

2   misleading about a statement, and why it is false.'"  *Id.* (quoting *Decker v. GlenFed, Inc. (In re*

3   *GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

4   III.   <u>DISCUSSION</u>

5          Global moves for judgment on the pleadings as to Aerojet's UCL claim based on

6   two theories: (1) the UCL permits only equitable relief, and where alternative avenues of relief

7   exist, as here, a UCL claim fails as a matter of law; and (2) Aerojet fails to plead its UCL claim,

8   under any prong, with the particularity required by Rule 9(b) and Aerojet cannot amend its

9   complaint to cure these deficiencies.  *See generally* Reply.  In opposition, Aerojet contends the

10  UCL permits the alternative relief it seeks and the allegations in the complaint are pled with the

11  specificity necessary to state a claim under each of the UCL's three prongs.  *See generally* Opp'n.

12  Aerojet also asks the court to rely on evidence beyond the complaint and convert Global's motion

13  to one for summary judgment.  *Id.* at 2–3, 9 n.1.

14         Given its threshold nature, the court first addresses Aerojet's request to convert

15  Global's motion to one for summary judgment before reaching the merits of the parties'

16  contentions.

17         A.   <u>Conversion of 12(c) Motion to Summary Judgment Motion</u>

18         "[I]t is within the district court's discretion whether to accept extra-pleading matter

19  on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it

20  and maintain the character of the motion as one under Rule 12(c)."  5C Charles A. Wright &

21  Arthur R. Miller, *Federal Practice and Procedure* § 1371 (3d ed. 2019); *Hal Roach Studios, Inc.*

22  *v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (in resolving motion under Rule

23

---

24  dispatching this argument, the court explained that while fraud itself may not be a necessary
    element under the UCL, when a complaint "allege[s] a unified course of fraudulent conduct and
25  rel[ies] entirely on that course of conduct as the basis of that claim[,] . . . the claim is said to be
    'grounded in fraud' or to 'sound in fraud[,]'" and the pleading, "as a whole" is subject to Rule
26  9(b).  *Id*; *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017)
    ("Where Plaintiff has alleged a 'unified course of fraudulent conduct,' Rule 9(b)'s particularity
27  requirement applies to the unlawful and unfair prong of the UCL in addition to the above-
    discussed fraudulent prong." (citing *Kearns*, 567 F.3d at 1126–27)).
28

1    12(c), if "the district court goes beyond the pleadings to resolve an issue[,] such a proceeding

2    must properly be treated as a motion for summary judgment"). But, if such a conversion occurs,

3    the court "must give the parties notice and an opportunity to be heard on the summary judgment

4    question." Wright & Miller, *supra*, § 1371.

5              Here, the court exercises its discretion and declines to convert Global's motion to

6    one for summary judgment. As explained below, Global's motion presents primarily legal

7    questions as to the viability of Aerojet's claims and ability to recover under the UCL. It is,

8    therefore, unnecessary for the court to weigh the parties' competing evidence when considering

9    these questions and declining to convert the motion will not prejudice Aerojet's ability to rebut

10   Global's assertions. *Cf. Prianto v. Experian Info. Sols., Inc.*, No. 13-CV-03461-TEH, 2014 WL

11   3381578, at *8 (N.D. Cal. July 10, 2014) (declining plaintiff's request to consider extrinsic

12   evidence because it was "irrelevant to the Court's resolution of the prima facie question" at hand).

13             B.    Viability of Aerojet's UCL Claim

14             Turning to the UCL claim, California Business & Professions Code section 17200,

15   also known as the UCL, prohibits "any unlawful, unfair or fraudulent business act or practice

16   . . . ." Each UCL prong—unlawful, unfair and fraudulent—provides a separate and distinct

17   theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

18   Moreover, "[u]nder the UCL, [p]revailing plaintiffs are generally limited to injunctive relief and

19   restitution.'" *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.9 (9th Cir. 2011) (some alterations

20   in original) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163,

21   179 (1999)).

22             Global first argues that Aerojet's UCL claim must be dismissed as a matter of law

23   because Aerojet may not seek equitable relief where alternative relief, including monetary

24   damages, is awarded. Reply at 1–6; Mot. at 11–17. Global also contends, in the alternative, the

25   allegations in the second amended complaint do not support a claim under any of the UCL's three

26   prongs. Reply at 6–10; Mot. at 6–11. The court addresses each argument in turn.

27

28

1                      1.      Equitable Relief Under the UCL

2                             a)      Adequate Alternative Remedies

3              Global contends that because the UCL provides for only injunctive or

4    restitutionary relief, Aerojet's breach of contract and bad faith claims "provide it with an adequate

5    remedy at law that enable it to recover damages."  Reply at 2.  For support, Global cites district

6    court opinions within the Ninth Circuit in which courts have dismissed UCL claims because

7    alternative remedies existed.  *Id.* at 2–3 (collecting cases).  Global also cites *Korea Supply Co. v.*

8    *Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), for the proposition that in insurance-dispute

9    actions, the UCL cannot be used as "an all-purpose substitute for a tort or contract action."  *Id.* at

10   3 (quoting *Korea Supply Co.*, 29 Cal. 4th at 1150).

11             Aerojet contends its prayers for injunctive relief, that Global be enjoined from

12   engaging in wrongful and deceptive business practices, as well as for restitution, that Global be

13   required to disgorge all premiums paid under the policy, are permissible under the UCL, as are

14   alternative forms of relief.  Opp'n at 10–16.

15             Although there are divergent views among district courts within the Ninth Circuit

16   on the issue of alternative theories of relief under the UCL, this court has previously taken the

17   position, as Aerojet notes, that there is "no basis in California or federal law for prohibiting the

18   pursuit of alternate remedies at th[e] early [pleading] stage," and has "declin[ed] to dismiss

19   plaintiff['s] equitable claims on this basis."  *Espineli v. Toyota Motor Sales U.S.A., Inc.*, No.

20   2:17-CV-00698-KJM-CKD, 2018 WL 3769383, at *4 (E.D. Cal. Aug. 9, 2018) (collecting cases);

21   *see also Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 1001 (E.D. Cal. 2018)

22   (explaining that prior to entry of judgment, plaintiff may elect to receive damages awarded at trial

23   or UCL restitution, but not both).  Global provides no compelling reason for the court to alter its

24   position and confine Aerojet's relief to damages alone at this juncture.

25                             b)      Injunctive Relief

26             Global also contends that Aerojet's request for injunctive relief is impermissible

27   because it is retrospective, rather than prospective.  Reply at 4.  This contention lacks merit.  On

28   its face, the second amended complaint seeks "preliminary and permanent injunctive relief

                                                 7

1  prohibiting Defendants from engaging in the wrongful practices, from continuing to make the

2  aforementioned misrepresentations, and from continuing to commit the aforementioned acts as

3  alleged in th[e] Complaint."  SAC ¶ 7 (prayer for relief).  The complaint also alleges that Global

4  "continues to unreasonably deny its indemnity obligations under the Policies," is "continuing to

5  engage in . . . misconduct . . . at the expense of its insureds" and Aerojet will continue to "incur

6  reasonable attorneys' fees in order to enforce" its rights.  *Id.* ¶¶ 78–79.

7        The complaint identifies the parties underwriting the policies at issue, the launch

8  incidents subject to the policies, the specific claims under the policies, the third-party settlement

9  informing the policy claims and the alleged violations effected through Global's claim denials

10  under the policy.  SAC ¶¶ 36–53.  These allegations, although detailing a past wrong, provide

11  sufficient detail to support, by way of inference, an alleged practice of improper coverage denials

12  for purportedly justified claims.  Although monetary damages ultimately may fully address

13  Aerojet's harm experienced as a result of the policy, there is, at this stage, an ongoing,

14  prospective nature to its allegations given Global's continued denial of coverage.  At hearing,

15  Aerojet's counsel clarified this aspect of the relief it seeks, in explaining that the assertion in

16  Aerojet's opposition that it "will now seek an injunction requiring Global to amend its Claims

17  Manual" merely clarifies the injunctive relief sought in the complaint.

18        Taken together, and viewed in the light most favorable to Aerojet, the allegations

19  are sufficient to suggest a likelihood of future harm amenable to injunctive relief.  *See Bates v.*

20  *United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("The plaintiff must demonstrate that

21  he has suffered or is threatened with a concrete and particularized legal harm coupled with a

22  sufficient likelihood that he will again be wronged in a similar way." (quotations and citations

23  omitted)); *cf. Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1140 (N.D. Cal. 2017)

24  (dismissing class action UCL claim for injunctive relief where plaintiff, a former employee, could

25  not establish, among other things, ongoing or future harm because plaintiff was no longer

26  employed by, and had no intent to return to, defendant employer; thus injunctive relief would be

27  of no personal benefit to plaintiff).

28

1        Global cites *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. SACV 11-

2   01197-CJC(ANx), 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012), as addressing facts

3   analogous to those here.  Mot. at 14.  *Silvercrest*, however, is distinguishable.  In *Silvercrest*, the

4   court dismissed the insured's UCL claim for two reasons: (1) failure to plausibly allege lack of

5   adequate legal remedy, and (2) failure to allege threat of ongoing future harm beyond a single

6   denial of coverage.  2012 WL 13028094, at *2–3.  The court here has rejected the first reason, as

7   explained above.  As to the second reason, *Silvercrest* is distinguishable: the *Silvercrest* court

8   noted that, at first blush, the insured's request for "restitution of premiums paid, attorney's fees,

9   disgorgement of profits and other restitutionary remedies, injunctive relief, and/or costs" appeared

10  to satisfy the UCL's equitable requirement; however, upon closer inspection, the insured's

11  general allegations of mishandled claims failed to show the requisite ongoing harm necessary to

12  make out a claim for injunctive relief.  *Id.* at *2–3.  Here, in contrast, Aerojet alleges that Global

13  engages in a practice of improperly denying policy claims at the expense of its insured.  SAC

14  ¶¶ 78–79.  Unlike in *Silvercrest*, a core aspect of Aerojet's claim is that Global is engaging in a

15  practice causing both past and future harm.  Aerojet's UCL claim is sufficiently prospective to

16  allow it invoke injunctive relief.

17                c)     <u>Disgorgement</u>

18       Finally, Global's assertion that the "disgorgement" Aerojet seeks is an improper

19  form of equitable relief also lacks merit.  *See* Mot. at 12–14.  As the opposition makes clear,

20  Aerojet not only seeks damages for unpaid claims, but also disgorgement of the premium

21  payments Global allegedly wrongfully obtained through agreeing to policy obligations it did not

22  intend to honor.  Opp'n at 10, 14.  Thus, when the complaint seeks disgorgement of funds

23  received through the policy, it is referencing funds Aerojet paid directly to Global based on a

24  false or deceptive premise.  SAC ¶ 78.  Restoration of funds obtained through such a transaction

25  is permitted under the UCL.  *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1088 (N.D. Cal. 2004)

26  ("The California Supreme Court has held that restitution under the UCL is limited to either

27  'money or property that defendants took directly from plaintiff' or 'money or property in which

28  [plaintiff] has a vested interest.'" (alteration in original) (citing *Korea Supply Co.*, 29 Cal. 4th at

1  1146–47)), *order clarified on reconsideration*, 419 F. Supp. 2d 1151 (N.D. Cal. 2005); *Krueger v.*

2  *Wyeth, Inc.*, 396 F. Supp. 3d 931, 954 (S.D. Cal. 2019) ("[T]he distinction between restitutionary

3  and non-restitutionary disgorgement turns on whether the money plaintiff seeks was obtained by

4  the defendant from the plaintiff in the first place.  If so, disgorgement is restitutionary."

5  (alteration in original) (quoting *Kraus v. Trinity Mgmt. Servs.*, Inc., 23 Cal. 4th 116, 126 (2000)));

6  *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1184 (S.D. Cal. 2012) ("Restitutionary

7  disgorgement, which focuses on the victim's loss, may be recovered under the UCL.  This is

8  typified in situations 'where the disgorged money or property [came] from the prospective

9  plaintiff in the first instance.'" (alteration in original) (citation omitted)).

10       Because Aerojet seeks return of premiums it paid directly to Global and Global

11  provides no response to this assertion, *see generally* Reply, Aerojet's disgorgement request is

12  permitted under the UCL.  *See SkinMedica, Inc.*, 869 F. Supp. 2d at 1184–85 ("[N]onrestitution-

13  ary disgorgement, which focuses on the defendant's gain and does not require that the plaintiff

14  suffered an identifiable loss, is not available under the UCL. Thus, disgorgement of profits is an

15  available remedy for an individual private plaintiff under the UCL only to the extent that it

16  constitutes restitution.").

17       Disgorgement is limited, however, to the premiums Aerojet paid directly to

18  Global.  It does not include attorneys' fees Aerojet expended pursuing the return of those

19  premiums.  Despite Aerojet's assertions in its opposition, Opp'n at 16, and at hearing, the court is

20  unaware of any authority suggesting attorneys' fees are permissibly included in a disgorgement

21  award of this nature.  Aerojet cites to none.  *See generally id.*  Indeed, this request appears to run

22  counter to disgorgement's general premise: that money or property once rightfully possessed by

23  one party, but now wrongfully obtained by another, be returned to its rightful owner.  *Korea*

24  *Supply Co.*, 29 Cal. 4th at 1149.

25       In sum, apart from the attorneys' fees Aerojet seeks as part of its disgorgement

26  request, the general equitable relief it seeks is proper under the UCL.

27

28

2.      Viability of Aerojet's Claims Under "Unlawful" Prong

Because each prong under the UCL supports a distinct theory of liability, *Kearns*, 567 F.3d at 1127, each prong must be pled with specificity.  Global argues Aerojet fails to state a claim under the UCL's "unlawful" prong because the statutory and regulatory provisions Aerojet identifies as forming a basis for Global's unlawful activity, namely California Insurance Code section 790.03 and California Code of Regulations ("C.C.R.") title 10, section 2695 *et seq.*, cannot ground a UCL claim.  Reply at 8.  Aerojet maintains that what constitutes unlawful activity is broadly defined; therefore, the statute and regulation, as well as the common law duty of good faith and fair dealing, are sufficient to state an unlawful prong claim.  Opp'n at 3–7. Here too Global's arguments are unavailing.

"To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate violation, and (2) an accompanying economic injury caused by the violation." *Shelton v. Ocwen Loan Servicing*, LLC, No. 18-CV-02467-AJB-WVG, 2019 WL 4747669, at *10 (S.D. Cal. Sept. 30, 2019).  "By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alterations and citations omitted).  "Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (alteration in original) (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)).  Where an "unlawful" claim sounds in fraud, it too must meet Rule 9(b)'s pleading standards.  *Hadley*, 243 F. Supp. 3d at 1094.

Here, the second amended complaint alleges Global's "misrepresentations, unfair claims handling, withholding of policy benefits, unreasonable delays causing damages, and other bad faith misconduct violate other statutes including Business & Professions Code Section 1750, *et seq.* and Insurance Code 790.03 and related regulations and/or provisions of the Insurance Code . . . ."  SAC ¶ 78.  The complaint also alleges Global "had the duty to act fairly and in good faith . . . in carrying out its responsibilities under the Policies," including making good faith coverage determinations under California's Insurance Code Fair Claims Settlement Practices

1    Regulations ("FCSPR") and other provisions, including Insurance Code sections 790.03(h)(2)–(6)

2    and (12)–(13) as well as 10 C.C.R. section 2695.7.  *Id.* ¶ 68.

3            Global relies on *Zhang v. Super. Ct.*, 57 Cal. 4th 364 (2013), for the proposition

4    that neither Insurance Code section 790.03, nor its enabling regulation, 10 C.C.R. section 2695.1,

5    can serve as the predicate offense for an "unlawfulness" claim under the UCL.  Reply at 8.  On

6    this score, Global is correct.  In *Zhang*, the court specifically held that "[p]rivate UIPA[3] actions

7    are absolutely barred; a litigant may not rely on the proscriptions of section 790.03 as the basis

8    for a[n] [unfairness] UCL claim."  *Zhang*, 57 Cal. 4th at 384; *see also Lennane v. Am. Zurich Ins.

9    Co.*, No. 2:13-CV-02311 JAM AC, 2014 WL 546061, at *3 (E.D. Cal. Feb. 10, 2014) ("*Zhang* is

10   clear that a plaintiff may not use the UCL to plead around an absolute bar to relief." (quotations

11   and alterations omitted)).  Additionally, the regulations set forth in 10 C.C.R. section 2695.1

12   cannot be used as a predicate offense for an UCL claim of unlawfulness because those regulations

13   are promulgated under the auspices of Insurance Code section 790.03(h); thus, the regulations

14   create no private right of action under the UCL given its linkage with section 790.03, which itself

15   creates no private right of action.  *See* 10 C.C.R. § 2695.1(a) ("The Insurance Commissioner has

16   promulgated these regulations . . . [t]o delineate certain minimum standards for the settlement of

17   claims, which when violated . . . constitute an unfair claims settlement practice within the

18   meaning of Insurance Code Section 790.03(h)."); *see also Moradi–Shalal v. Fireman's Fund Ins.

19   Cos.*, 46 Cal. 3d 287 (1988) (holding that section 790.03(h) has no private right of action).

20           Global's argument fails, however, regarding the viability of Aerojet's

21   unlawfulness claim as predicated on the alleged violation of Global's common law duty to act in

22   good faith.  "Conduct that violates obligations imposed by common law [can] also be sufficient to

23   support a UCL claim under the unlawful prong."  *Shelton v. Ocwen Loan Servicing, LLC*, No. 18-

24   CV-02467-AJB-WVG, 2019 WL 4747669, at *10 (S.D. Cal. Sept. 30, 2019) (citing *Newton v.

25   Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1058 (N.D. Cal. 2014)); *Zhang*, 57 Cal. 4th at 380

26   ("[B]ad faith insurance practices may qualify as any of the three statutory forms of unfair

27

28           [3] Insurance Code section 790 *et seq.* is commonly known as the Unfair Insurance Practices
     Act or "UIPA."  *See Zhang*, 57 Cal. 4th at 368.

1    competition."). "For a breach of contract to be the basis of a UCL claim, the breaching conduct

2    must also constitute conduct that is unlawful, unfair, or fraudulent." *Shelton,* 2019 WL 4747669,

3    at *10. In other words, a breach of contract claim alone is an insufficient predicate for an

4    "unlawfulness" prong claim, *Shroyer v. New Cingular Wireless Servs.*, Inc., 622 F.3d 1035, 1044

5    (9th Cir. 2010); however, that same breach of contract claim may possibly state a claim under the

6    UCL's "unlawfulness" prong if flanked by allegations the conduct is also unlawful, unfair or

7    fraudulent, *id.* (citing approvingly *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319

8    F. Supp. 2d 1059, 1074–75 (C.D. Cal.2003) (violation of common law can support § 17200 claim,

9    provided offending conduct is also unlawful, unfair or fraudulent)).

10         Here, Aerojet sufficiently alleges conduct beyond the breach of contract itself,

11   with the specificity required by Rule 9(b), to plead that Global has violated its duty of good faith

12   and fair dealing. *See* SAC ¶ 69 ("Defendants unfairly, unreasonably, and without proper cause,

13   breached . . . their obligation to act fairly and in good faith" by "failing to indemnify Aerojet

14   under the Policies and reimburse all losses sustained . . . failing to conduct reasonable, prompt

15   and unbiased investigations . . . failing to communicate . . . refusing to make timely payments . . .

16   adopting unreasonable coverage-limiting interpretations . . . misrepresenting its coverage

17   obligations . . . [and] [t]aking [these] actions . . . to force Aerojet to forego benefits to which it is

18   entitled[.]"). In the insurance context, failure to operate in good faith is an unlawful practice. *See*

19   *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1249 (2006) ("In addition to the

20   duties imposed on the contracting parties by the express terms of their [insuring] agreement, the

21   law implies in every contract a covenant of good faith and fair dealing."). Here, Aerojet's

22   allegations suggest more than a simple breach of contract; they suggest Global is engaged in the

23   practice of avoiding its obligations under the policies it issues, and does so at the expense of the

24   parties with which it contracts.

25         Aerojet's "unlawful" UCL claim survives because it alleges, with adequate

26   specificity, that Global breached its duty of good faith and fair dealing.

27

28

3.     Viability of Aerojet's Claims Under "Unfair" Prong

Global contends Aerojet's allegations are insufficient under the UCL's "unfair" prong because Aerojet "has not alleged that Defendants' actions violated a public policy, nor has it tied its claim of unfairness to any antitrust law, constitutional or statutory provision, or regulation carrying out such a statutory policy."  Mot. at 8.  In opposition, Aerojet contends it "plead[s] facts, and Global produced evidence in discovery, showing Defendants [sic] engaged in unfair conduct."  Opp'n at 8.

In this respect, Global is correct.  "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).  Although California courts are divided as to what constitutes "unfair" conduct, *see Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) (explaining that California courts will employ either "balancing test" or "tethering test" to determine unfair conduct), the distinction is irrelevant here given the bare allegations in the complaint.  Aerojet's only allegation of "unfair" conduct is that Global has "placed their own interests ahead of their policyholder's[.]"  SAC ¶ 71.  Aerojet's opposition effectively confirms the inadequacy of these allegations by pointing almost exclusively to evidence produced during discovery, and not to allegations in the complaint itself.  *See* Opp'n at 8–9.  Because the court has declined to convert Global's motion into one for summary judgment, it does not consider the extrinsic evidence Aerojet proffers.  Aerojet's scant allegations of Global's unfair practices in the second amended complaint fail to satisfy Rule 9(b)'s heightened pleading standard; thus, Aerojet fails to state a claim under the UCL's unfair prong.

Because the instant complaint is Aerojet's second amended pleading,[4] the court declines to grant Aerojet further leave to amend in order to adequately plead an unfair practice claim under the UCL.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grecia v. VUDU, Inc.*, No. C-14-0775-EMC, 2015 WL 538486, at *10 (N.D. Cal. Feb. 9, 2015) (denying leave to amend

---

[4] The original complaint appears at ECF No. 1, and the first amended complaint at ECF No. 59.

14

1 | where plaintiff "had ample opportunity over many months to allege a sufficiently pled claim. . . .

2 | yet [failed] to do so").

3 |                           4.        Viability of Aerojet's Claim Under "Fraudulent" Prong

4 |                  Finally, Global argues Aerojet's allegations do not state a claim under the UCL's

5 | "fraudulent" prong because they lack the "who, what, when, where, and how" required by Rule

6 | 9(b).  Reply at 6–7.  Aerojet contends its fraud-based allegations are sufficiently pled, and here as

7 | well points to additional facts revealed through discovery, particularly through the deposition of

8 | Scott Ross, Global's underwriter, to support its fraudulent-prong claim under the UCL.  Opp'n at

9 | 9–10 (citing SAC ¶ 73; Ross Dep., Ex. D, ECF No. 250-1).  Here again, Global is correct.

10 |                  "To state a claim under the fraudulent prong of the UCL, 'it is necessary only to

11 | show that members of the public are likely to be deceived' by the business practice or advertising

12 | at issue."  *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011)

13 | (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).  There can be a violation without

14 | "actual deception, reasonable reliance and damage."  *Daugherty v. American Honda Motor Co.,*

15 | *Inc.*, 144 Cal. App. 4th 824, 838 (2006).  Still, in "alleging fraud or mistake, a party must state

16 | with particularity the circumstances constituting fraud or mistake.  Plaintiffs must include an

17 | account of the time, place, and specific content of the false representations at issue.  Additionally,

18 | a plaintiff stating a claim under the 'fraud' prong must plead actual reliance."  *In re Anthem, Inc.*

19 | *Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *34 (N.D. Cal. May 27,

20 | 2016) (citations omitted).

21 |                  In the second amended complaint, Aerojet alleges "Global's conduct . . .

22 | constituted an intentional misrepresentation and concealment of material facts known to

23 | Defendants, all with the intent to deprive Aerojet of property [and] legal rights . . . such as to

24 | constitute malice, oppression and/or fraud."  SAC ¶ 73.  Aerojet also alleges Global

25 | "misrepresented their coverage obligations under the Policies and consciously disregarded

26 | Aerojet's rights . . . to which it is entitled under the Policies."  *Id.*  While these allegations,

27 | identified by Aerojet in its opposition, *see* Opp'n at 9, signal fraud, they do not provide the

28 | specificity required by Rule 9(b).  The complaint does allege Global was "[m]isrepresenting its

1   coverage obligations under the Policies," but does not specifically state what obligations were

2   misrepresented, through whom the misrepresentations were made, or the manner in which Aerojet

3   actually relied on the alleged misrepresentations.  While the complaint suggests Aerojet agreed to

4   settle the pending Orbital dispute because it expected indemnification through the Global policy,

5   these allegations do not point to any material representation upon which Aerojet relied.  *See* SAC

6   ¶¶ 44–53.  If anything, the complaint suggests the opposite, saying Global consented to the

7   Aerojet-Orbital settlement, "while reserving its right to deny coverage."  *Id.* ¶ 46.  Even

8   interpreting these allegations in the light most favorable to Aerojet, as the court must, they do not

9   meet the particularity demands of Rule 9(b).  Aerojet cannot fill the gaps in its complaint by

10   pointing to statements by Global's underwriter, Scott Ross, during his deposition.

11         These allegations, as pled, do not satisfy the "who, what, when, where, and how"

12   under Rule 9(b); therefore, the court dismisses the "fraudulent" prong of Aerojet's UCL claim.

13   As with the "unfairness" prong of Aerojet's UCL claim, given Aerojet's prior opportunities to

14   amend, the court does not grant Aerojet a further opportunity to amend this claim.

15         In sum, the court GRANTS Global's motion for judgment on the pleadings,

16   without leave to amend, as to the "unfair" and "fraudulent" prongs of Aerojet's UCL claim, and

17   DENIES the motion as to the "unlawful" prong.  The court also DENIES the motion to the extent

18   Global contends Aerojet is precluded from seeking equitable remedies here.

19   IV.     <u>CONCLUSION</u>

20         For the reasons stated above, defendants' motion for judgment on the pleadings,

21   ECF No. 234, is GRANTED in part and DENIED in part.  Plaintiff may proceed on its UCL

22   claim under the "unlawful" prong, but its claims under the "unfair" and "fraudulent" prongs are

23   dismissed.

24         IT IS SO ORDERED.

25   DATED:  July 9, 2020.

26

27   CHIEF UNITED STATES DISTRICT JUDGE

28