UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEROJET ROCKETDYNE, INC., | No. 2:17-cv-01515-KJM-AC |
| Plaintiff, | |
| v. | ORDER |
| GLOBAL AEROSPACE, INC., et al., | |
| Defendants. | |

Defendant Global Aerospace Inc. ("Global") and counterclaimants (collectively "defendants")[1] move for reconsideration of the assigned magistrate judge's October 7, 2019 order granting plaintiff's motion to compel and denying defendants' motion to compel. For the foregoing reasons the court DENIES in full defendants' motion to reconsider.

I.  BACKGROUND

This is a liability insurance coverage action between insured plaintiff and a number of its insurers (collectively "defendants") arising out of a settlement agreement between plaintiff and a third-party company. Jt. St. Re Disc. Disagreement Re Mot. to Compel Prod. of

---

[1] Defendant Mitsui Sumitomo Insurance, Co. of America, which has its own counsel, did not join the motion to reconsider. *See* Answer & Countercl. ¶¶ 106–32, ECF No. 154 (identifying Global defendants).

1    Docs. at 8, ECF No. 95.² According to the operative Second Amended Complaint ("SAC"), the
2    dispute between plaintiff and the third-party company, Orbital Sciences Corporation ("Orbital"),
3    stems from two incidents, May 22, 2014 and October 28, 2014, in which engines plaintiff
4    supplied to Orbital failed, causing property damage.  Sec. Am. Compl. ¶ 36, ECF No. 149.  On
5    September 21, 2015, plaintiff and Orbital entered a $50 million settlement following which
6    plaintiff brought this liability insurance coverage case seeking indemnity against defendants.  Jt.
7    St. Re Mot. to Compel Prod. of Docs. at 8, ECF No. 178; Sec. Am. Compl. ¶ 48.  Defendants
8    answered and brought counterclaims for breach of the covenant of good faith and fair dealing,
9    breach of contract, estoppel and waiver.  Answer & Countercl. ¶¶ 106−07, ECF No. 154.  This
10   court previously set forth the detailed factual and procedural history of this matter in its
11   September 24, 2019 order on defendants' prior motion to reconsider rulings by the magistrate
12   judge; the court incorporates that history by reference here.  First Mot. to Recons. Order at 3–9,
13   ECF No. 233.

    A.    Motions to Compel

15              On January 30, 2019, defendants filed a motion to compel production of several
16   documents Aerojet had redacted as privileged and requested in camera review of those
17   documents.  Global Mot. to Compel, ECF No. 141.  On February 1, 2019, plaintiff brought its
18   own motion to compel defendants' production of several documents and responses to
19   interrogatories.  Aerojet Mot. to Compel, ECF No. 151.  The parties opposed one another's
20   motions in their joint statements, Jt. St. Disc. Disagreement Re Def.'s Mot., ECF No. 177; Jt. St.
21   Re Disc. Disagreement Re Pl.'s Mot., ECF No. 178.

22              In resolving defendants' motion to compel, the magistrate judge concluded
23   Aerojet's documents "were properly redacted on privilege grounds," and reasoned defendants'
24   challenge to plaintiff's privilege claims did not meet "the necessary threshold showing that the
25   attorney-client privilege d[id] not apply; . . . [and] the court would not exercise its discretion to
26   conduct an in camera review in light of [defendants'] superficial arguments."  First Mot. to

---

² The court cites to the page numbers assigned by the court's ECF system.

1  Compel MJ Order ("March 13, 2019 order") at 5–6, ECF No. 189.  Thus, the magistrate judge
2  declined defendants' request for in camera review and denied their motion to compel.  *Id.*
3          At the same time, the magistrate judge granted plaintiff's motion in its entirety and
4  compelled the production of several categories of documents: (1) information concerning
5  Global's investigation of Aerojet's claims including allegedly privileged documents,
6  (2) information related to other Global insureds, including Orbital, (3) claims manual file
7  documents, and (4) joint defense agreements between the defendants.  First MJ Order at 6–9.  The
8  magistrate judge reasoned these documents were not privileged and plaintiff was entitled to
9  production of them in full.  *Id.*  In her order, the magistrate judge noted she had previously ruled
10 on this topic when defendants moved for a protective order to bar discovery under the Federal
11 Rules of Civil Procedure related to its communication with outside counsel Condon & Forsyth
12 and Hinshaw & Culbertson during the claims investigation process.  *See* MJ Order on Protective
13 Order at 4–7, ECF No. 137 (granting defendant's motion for a protective order, ECF No. 130, in
14 part and denying in part).[3]  In both orders, the magistrate judge found defendants' documents
15 were not protected by attorney-client privilege because the applicable law provides "when an
16 attorney conducts an investigation not for the purpose of preparing for litigation or providing
17 legal advice, but rather for some other purpose, [attorney-client] privilege is inapplicable."  MJ
18 Order on Protective Order at 5 (quoting *Payton v. New Jersey Tpk. Auth.*, 148 N.J. 524, 550–51
19 (1997)).

20          B.      First Motion for Reconsideration and Court's Order Resolving
21          On March 27, 2019, defendants moved for reconsideration of the magistrate
22 judge's March 13, 2019 order.  First Mot. to Recons., ECF No. 197.  Plaintiff opposed.  Opp'n,
23 ECF No. 200.  Specifically, defendants sought reconsideration of the magistrate judge's findings
24 that: (1) plaintiff was entitled in discovery to review attorney-client communications; (2) plaintiff

---

[3] The magistrate judge explained, "As the responding party, Global has an obligation to construe Aerojet's topics reasonably."  MJ Order on Protective Order at 9 (quoting *Luna v. Universal City Studios LLC*, No. CV 12-9286 PSG (SS), 2015 WL 13655668, at *6 (C.D. Cal. Feb. 10, 2015) ("a 30(b)(6) topic is not objectionable to the extent that it may be reasonably construed to seek relevant information capable of being addressed in a deposition.")).

was entitled to attorney files; and (3) plaintiff was entitled to information about defendants' other insureds. *See generally* First Mot. to Recons.  Defendants also argued the Joint Defense Agreement and claims administration fees and expense schedule are not relevant to this action. *Id.*

In this court's order on defendants' first motion to reconsider, First Mot. to Recons. Order, the court referred a portion of defendants' motion back to the magistrate judge to consider new evidence in the first instance, *id.* at 6, at the same time deciding to the extent defendants' motion was unaffected by this new evidence, the motion was denied, *id.*  This court also referred the balance of the matter back to the magistrate judge to "more fully explain the law she reli[ed] on, the evidence she considered and the basis for her decisions" in granting plaintiff's motion to compel in its entirety. *Id.* at 16.

In moving for reconsideration then, defendant had argued in part it had become aware of "[a] more compelling example of the heavy-handed nature of [plaintiff's] redactions" on February 28, 2019, when defendants re-deposed plaintiff's witness, Peter Cova.  First Mot. to Recons. Order at 23.  Mr. Cova's deposition took place after the parties filed their joint statement on their discovery dispute and before the issuance of the magistrate judge's order.  *Id.* at 5.  As the court noted, defendants made no attempt to supplement the record before the magistrate judge or request she delay her ruling until they could supplement the record before her.  *Id.*  In its first review, this court referred the matter back to the magistrate judge to consider in the first instance whether Mr. Cova's testimony required a different result.  *Id.* at 6, 16.

In referring the matter back to the magistrate judge the court also directed that she address plaintiff's demand for defendants' draft documents, including those underlying:
(1) defendants' privilege log entries identifying thirteen draft market reports to the insurer defendants, most of which were authored by Global Claims attorney Tamer Ahmed and two of which had no identified author; (2) three entries identifying draft communications to plaintiff, for which no author was identified; (3) three draft communications for which no further description or author was provided; and (4) a draft request for documents and a draft reservation of rights
/////

4

letter. *Id*. at 11.  The court further directed the magistrate judge to clarify her prior order on plaintiff's motion with respect to defendants' communications with co-insurers. *Id.* at 12.

   C. <u>Second Magistrate Judge Order and Motion to Reconsider</u>

    On October 7, 2019, on remand, the magistrate judge once again granted plaintiff's motion and denied defendants' motion to compel.  Second Mot. to Compel MJ Order ("Sec. MJ Order"), ECF No. 239.

    On October 21, 2019, defendants moved for reconsideration of the magistrate judge's second order.  Second Mot. to Recons. ("Sec. Mot. to Recons."), ECF No. 248.  Plaintiff timely opposed.  Opp'n, ECF No. 249.

II. <u>LEGAL STANDARD</u>

    Federal Rule of Civil Procedure 72(a) requires that district judges consider timely objections to nondispositive pretrial orders issued by magistrate judges and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); E.D. Cal. R. 303(f).  A magistrate judge's decision is "'contrary to law' if it applies an incorrect legal standard, fails to consider an element of [an] applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Martin v. Loadholt*, No. 1:10-cv-00156-LJO-MJS, 2014 WL 3563312, at *1 (E.D. Cal. July 18, 2014); 12 Fed. Prac. & Proc. Civ. § 3069 (3d ed.) (noting "'contrary to law' appears to invite plenary review," though "many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis").  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Prods. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 622 (1993) (alteration in original) (quoting *United States v. United States Gypsum Co*., 333 U.S. 364, 395 (1948)). "[R]eview under the 'clearly erroneous' standard is significantly deferential . . . ." *Id*. at 623.

III. <u>DISCUSSION</u>

    Defendants contend the magistrate judge's grant of plaintiff's motion to compel should be vacated on the grounds it is both clearly erroneous and contrary to law.  Sec. Mot. to

5

Recons. at 11, 25, ECF No. 248.  In light of the magistrate judge's order explaining the law she applied, the evidence she considered, and the reasoning underlying her decision, the court denies defendants' motion to reconsider, as explained below.

      A.      <u>Choice of Law v.a.v. Attorney Client Privilege</u>

The parties agree that on the issue of attorney-client privilege, there is no apparent conflict between the laws of California, New York and New Jersey with respect to this motion. Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 12 n.6, 21 n.22, ECF No. 178 ("For purposes of this Motion to Compel, the Global Defendants rely on California, New Jersey, and New York law— none of which appear to be in conflict on the issue of attorney—client privilege."); *see also* Sec. MJ Order at 7–8.

At the same time, defendants argue "a determination that there is no conflict of laws among New York, New Jersey and California on this issue requires the application of California law to litigation pending in this Court." Sec. Mot. to Recons. at 12.  In doing so, defendants rely on cases standing for the general proposition that California resolves choice-of-law questions using a "governmental interest analysis," to identify the applicable law based on the interests of the litigants and the affected states. *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989), *as amended on reh'g* (Apr. 28, 1989); *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1464 (2007), *as modified* (Sept. 5, 2007) ("If there is no material difference, there is no choice-of-law problem and the court may proceed to apply California law").

Defendants also argue "[r]esolution of this issue required the magistrate judge to consider the dominant purpose of the relationships between the parties to the communications." Sec. Mot. to Recons. at 13.  In support of this proposition, defendants point to a prior decision by this court as well as a decision by a colleague. *See Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 2:12-CV-2182 KJM KJN, 2014 WL 1366252, at *4 (E.D. Cal. Apr. 7, 2014) (quoting *Clark v. Superior Court,* 196 Cal. App. 4th 37, 51, 125 Cal.Rptr.3d 361 (2011) ("[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication.")); *Umpqua Bank v. First Am. Title Ins.*

1    *Co.*, No. CIV S-09-3208 WBS EF, 2011 WL 997212, at *3 (E.D. Cal. Mar. 17, 2011) (noting
2    "requirement [of the court] that it make a determination as to which function predominated").
3    The court is not persuaded by these cases.
4               As noted above, in its September 24, 2019 order, this court asked the magistrate
5    judge to clarify the law upon which she relied in granting plaintiff's motion to compel. *See* First
6    Mot. to Recons. Order at 11:15–17.  In her order providing this clarification, the magistrate judge
7    held the law of New Jersey applies.  Sec. MJ Order at 7.  The court agrees with this conclusion.
8    After reviewing the applicable federal law with respect to choice of law in the context of
9    attorney-client privilege questions, the magistrate judge found that, while the forum state
10   generally applies its own rule of decision, an exception arises when a party litigant timely invokes
11   the law of a foreign state.  *See Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974).  Moreover,
12   "[t]he state of domicile of the corporation asserting the attorney-client privilege is an important
13   factor to consider in choosing the law that governs the scope of that privilege." *Connolly Data*
14   *Sys., Inc. v. Victor Techs., Inc.*, 114 F.R.D. 89, 91 (S.D. Cal. 1987).
15              In this case, defendants claimed attorney-client and/or work product privilege as a
16   basis for not producing materials in response to plaintiff's request for documents.  Jt. St. Re
17   Aerojet Mot. at 11–17.  Defendants are Delaware corporations with principal places of business
18   in Parsippany, New Jersey, and are headquartered in New Jersey.  Answer & Countercl. at 4.
19   The communications at issue took place at least in part in New Jersey.  *Id*. ¶¶ 106, 180.
20   Consistent with California's "governmental interest analysis," the magistrate judge found New
21   Jersey has the greatest interest in application of its privilege laws to the claimed privileges
22   underlying this motion.  Sec. MJ Order at 7.  The court finds no reason to reconsider the
23   magistrate judge's conclusion, as it is not clearly erroneous or contrary to law.
24              Defendants also contend that "[e]ven if New Jersey law were to apply" to its
25   motion to compel, "the October 7 Order must be set aside . . . because it fails to apply New
26   Jersey's legal standard for determining whether [pre-denial insurance coverage investigation
27   documents] are protected by the attorney-client privilege" and instead "quotes dicta from *Payton*
28   *v. New Jersey Tpk. Auth.,* 148 N.J. 524 (1997), repeated in *Paff v. Div. of Law,* 412 N.J. Super.

1    140 (App. Div. 2010)." Sec. Mot. to Recons. at 13.  The court agrees with the observation
2    regarding dicta in *Payton*, but otherwise is not persuaded.  While *Payton* did not "clearly
3    establish[] that an insurer's claims investigation constitutes a standard business activity to which
4    no attorney-client privilege attaches," *see* Sec. Mot. to Compel MJ Order at 9:8–11, it does not
5    follow that the magistrate judge erred in concluding defendants' investigation of the claim prior
6    to denial was "in fact just that: an investigation, and not actual preparation for litigation," *id*. at
7    9:11–14.  In *Payton*, the court disagreed with defendant's blanket contention that the attorney-
8    client privilege protected the entire investigatory process because attorneys employed by
9    defendant participated in the investigation.  *Payton*, 148 N.J. 524 at 550.  In *Paff*, the court quotes
10   *Payton* to clarify that an exception to the attorney-client privilege applies "when an attorney is not
11   providing legal advice, but is merely performing 'nonlegal duties' such as conducting an
12   investigation." *Paff*, 412 N.J. Super. at 151–52.

13           The magistrate judge's conclusions here are not clearly erroneous or contrary to
14   law to the extent she references *Payton* and *Paff*, given that New Jersey law has "repeatedly
15   recognized that the [attorney-client] privilege is 'limited to communications made to the attorney
16   in his professional capacity.'" *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 562 (App.
17   Div. 1984) (quoting *Metalsalts Corp. v. Weiss*, 76 N.J. Super. 291, 297 (Ch. Div. 1962)); *see* Sec.
18   MJ Order at 8:5–10.  Furthermore, "a fine line exists between an attorney who provides legal
19   services or advice . . . and one who performs essentially nonlegal duties.  An attorney who is not
20   performing legal services or providing legal advice . . . does not qualify as a 'lawyer' for purposes
21   of the [attorney-client] privilege." *Payton*, 148 N.J. 524 at 550–51.  Accordingly, the court must
22   determine the nature of the role defendants' attorneys played with regard to each claimed
23   privilege document, separate from their status as attorneys.  *Id*.  As explained below, the record
24   supports the conclusion defendants' attorneys were performing nonlegal duties in the course of a
25   claim investigation process and their communications with defendants were routine, non-
26   privileged communications.
27   /////
28   /////

B. <u>Defendants' Initial Claims Investigation</u>

Plaintiff also seeks documents relating to defendants' initial claims investigation, including as noted the pre-denial investigation file of outside counsel Condon & Forsyth. Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 11–17. Defendants claim these files also are protected from discovery by attorney-client privilege and/or work product protection. *Id.*

Defendants indicate in a footnote that they "do not dispute that claims investigations are a routine part of an insurer's work." Sec. Mot. to Recons. at 14 n.6. However, defendants argue they "responded to the unique circumstances surrounding this particular matter," and the magistrate judge rejected "uncontroverted first-hand evidence of the work . . . performed by [its] claims attorneys and outside coverage counsel" and accepted plaintiff's "unsubstantiated contentions regarding the nature of such work based on inapplicable provisions of the Global Claims Manual." *Id.* at 14.

Here, defendants appear to overstate the nature of their claims investigation process in reliance on the "dominant purpose of the relationship between the parties to the communication." Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 22 (quoting *Lennar Mare Island, LLC*, 2014 WL 1366252, at *3). Nevertheless, arguing that plaintiff's underlying claim was "not a routine claim," Decl. of Anthony Murphy, Vice President for Global Aerospace, Inc. ("Murphy Decl.") ¶ 9, ECF No. 178, or that defendants "anticipated the potential for litigation should it determine that there was no coverage," *id*. ¶ 12, does not now convert defendants' claims investigation into a coverage dispute to which the privilege attaches. Plaintiff is essentially correct that "an insurer's claims investigation is a routine business activity to which no attorney-client privilege exists." Opp'n at 12 (citing *Payton*, 148 N.J. at 551 ("[W]hen an attorney conducts an investigation not for the purpose of preparing for litigation or providing legal advice, but rather for some other purpose, the privilege is inapplicable.")).

Moreover, defendants specifically distinguish between their claims handling group and its legal counsel for purposes of coverage. Global explains that its legal counsel's office is the in-house department charged with providing legal advice, and is distinct from claims handling operations:

9

> Global maintains a claims group the purpose of which is to handle claims submitted by Global insureds. Global's claims group consists of Claims Handlers and the Director of Claims. Global maintains two types of Claims Handlers—Claims Representatives and Claims Attorneys. The only difference between the two is that Claims Attorneys have a law degree. But the role of both is the same—to handle claims. Neither are to provide legal advice. That is the role of Global's legal department, which is separate from the claims group.

Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 13, ECF No. 178.

Additionally, defendants submitted to the magistrate judge the declaration cited above from Anthony Murphy, Vice President for Global in its claims department, in which he avers that from the outset, defendants "viewed plaintiff's claim as a coverage case that required in house coverage counsel . . . to investigate and analyze the claim to determine whether it was covered by the applicable policies and to provide a coverage recommendation to the co-insurers." Murphy Decl. ¶ 10. As the authorities reviewed above teach, the mere fact attorneys are involved in conducting an insurance investigation does not mean their communications are privileged; they are not when the investigation is part of a company's routine business activity.

Having carefully reviewed the magistrate judge's order, the court does not find the magistrate judge misconstrued the record before her and or that she committed clear error.

    C.    <u>Condon & Forsyth's Pre-Denial Claim Investigation</u>

In granting plaintiff's motion to compel, the magistrate judge found defendant "has not met its burden as the party asserting privilege" to show the attorney client privilege applies to Condon & Forsyth's pre-denial claim investigation, which occurred between August 21, 2015 and October 4, 2016,[4] because "the evidence suggests outside counsel was acting to investigate the claim in conjunction with [defendants'] claims group." Sec. MJ Order at 10:15–16. Defendants argue the magistrate judge erred in finding the timing of retention, the lack of an engagement letter and defendants' failure to follow the multi-step process laid out in the

---

[4] Aerojet tendered its claim to Global on August 21, 2015. Global denied coverage on October 4, 2016 and reaffirmed its denial on February 16, 2017 and April 26, 2017. Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 8.

Claims Manual before retaining outside counsel, taken together, undermine defendants' contention that Condon & Forsyth's role was confined to providing coverage advice. *See* Sec. MJ Order at 10:9–12.

As noted above, in her prior determination that the materials called for by plaintiff's 30(b)(6) request were not protected by attorney-client privilege the materials because they were not created during "an investigation [] for the purpose of preparing for litigation or providing legal advice," the magistrate judge relied on *Payton*, supra. *Id.* at 5 (quoting *Payton*, 148 N.J. at 550–51). Defendants argue the matter currently before this court falls as well outside the scope of the "actual rule articulated in *Payton*, as opposed to its *dicta*," Sec. Mot. to Recons. at 22, because Global's Claims Director, Sharon Holahan,[5] "recognized immediately that there were coverage questions requiring in-depth analysis" and she "put an in-house coverage team in place," exercising her authority to "have Mr. [Anthony] Murphy[6] retain Condon & Forsyth as coverage counsel" on August 24, 2015. *Id.* at 21 (citing First MJ Order); Murphy Decl. ¶ 13; *see also* Jt. St. Re Disc. Disagreement Re Pl.'s Mot., Ex. 1 (August 24, 2015 Email) at 32, ECF No. 178.

Defendants' claims manual authorizes handlers to hire outside attorneys to conduct claims investigations and to serve as coverage counsel. *Id.* at 17–18; Sec. MJ Order at 10:2–12. While defendants assert Global engaged Condon & Forsyth to conduct a coverage analysis as opposed to a claims investigation, the record does not bear out that assertion. Murphy Decl. at 43 ¶ 14. Section 8.3 of the claims manual outlines a nine-step process for claims handlers to address coverage questions. Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 18. The seventh step details the process for engaging coverage counsel, which defendants concede they did not follow when hiring Condon & Forsyth. *Id.*

---

[5] Plaintiff's broker submitted its initial claim directly to Ms. Holahan, after business hours on Friday, August 21, 2015. Decl. of Tamer Ahmed, Vice President and Claims Attorney for Global Aerospace, Inc. ¶ 3, ECF No. 178.

[6] Mr. Murphy, a lawyer, worked on plaintiff's initial 'claim' submitted by [plaintiff] in August 2015, and then the actual claim that plaintiff submitted for $6.9 million in February 2016, under two liability insurance policies issued by defendants. Murphy Decl. ¶¶ 1, 3.

Moreover, defendants did not produce an engagement letter, Resp. & Obj. to Pl.'s Interrog. at 146:26–27, ECF. 178, and instead argue simply "an engagement letter is not necessary to retain counsel to provide legal advice," Sec. Mot. to Recons. at 21 n.13 (citing *Home Care Indus., Inc. v. Murray*, 154 F. Supp. 2d 861, 868–70 (D.N.J. 2001) (discussing whether an implied attorney-client relationship existed between corporation's attorney and its President)). The court finds no error in the magistrate judge's assigning weight to the lack of an engagement letter between any defendant and Condon & Forsyth limiting that firm's role to coverage counsel.

In sum, here as well nothing in defendants' motion convinces the court the magistrate judge committed clear error in finding no privilege exists with respect to Condon & Forsyth's pre-denial claim investigation materials, dated from August 21, 2015, with the onset of defendants' investigation of plaintiff's claim, through October 4, 2016, the date of defendants' first denial letter. *See* Sec. MJ Order at 11:1–3.

### D. Defendants' Draft Documents

In its September 24, 2019 order, this court also referred this matter back to the magistrate judge for explanation of how the attorney-client privilege and the work product doctrines informed her analysis leading her to grant plaintiff's motion. Defendants argue the magistrate judge erred the second time, Sec. Mot. to Recons. at 23, in granting the plaintiff's motion to compel production of draft documents they claim are protected by either the attorney-client privilege or the work-product doctrine.

#### 1. Attorney-Client Privilege

The magistrate judge applied the same attorney-client privilege analysis here as she did with respect to the claims investigation materials discussed above, while noting here "the documents were not expressly authored by attorneys (with the exception of Ahmed acting as claims investigator. . .)." Sec. MJ Order at 10:25–28. Even if the documents were directed to attorneys, the attorney-client privilege does not apply just because a statement was made by or to an attorney. *See Payton*, 148 N.J. at 550–51.

Relying on *Payton*, the magistrate judge concluded, defendants' "[thirteen draft] [m]arket reports, communications to the insured, and reservation of rights/requests for

12

documents" should be treated no differently in discovery than [defendants'] other pre-denial investigative communications" because they are "all part of normal claims handling activities." Sec. MJ Order at 10–11. While defendants contend "[t]he unrefuted evidence in the record clearly establishes . . . draft documents were prepared in anticipation of litigation because at the time of their preparation [defendants'] claims attorneys believed that litigation was a real possibility and that belief was objectively reasonable," Sec. Mot. to Recons. at 23, the court has explained above why the magistrate judge's conclusion that the communications related to claims handling was not in error.

Plaintiff also notes, "under federal law, an insurer cannot reasonably anticipate litigation prior to the denial of a claim." Opp'n at 13 (citing *Cellco P'ship v. Certain Underwriters at Lloyd's London*, No. CIV.A. 05-3158 (SRC), 2006 WL 1320067, at *5 (D.N.J. May 12, 2006)). The timing of Condon & Forsyth's retention supports outside counsel's involvement in the investigation of plaintiff's claim because plaintiff tendered its claim to defendants on August 21, 2015; the court is not persuaded defendants would have conducted any material investigation in a single day. *See* Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 11. The record supports a conclusion defendants' investigation of plaintiff's initial "claim" began August 21, 2015 and lasted through October 4, 2016,[7] the date defendants denied coverage. *Id.* at 8.

Again, the court cannot find the magistrate judge committed clear error.

### 2. Work Product Doctrine

Defendants also contend draft documents are protected by the work product doctrine. Sec. Mot. to Recons. at 23. The magistrate judge reasoned the draft documents at issue are not protected work product: "[t]o qualify for protection under the [work product doctrine], documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." Sec. MJ Order at 11 (citing *In re California Pub. Utils. Comm'n*, 892 F.2d 778,

---

[7] Defendants' privilege log identifies 195 documents created during defendants' investigation of plaintiff's claim, with the first entry dated August 25, 2015, and the last entry dated October 4, 2016. Jt. St. Re Disc. Disagreement Re Pl.'s Mot., Ex. 7 (Privilege Log) at 60–73, ECF 178.

780–81 (9th Cir. 1989)). The magistrate judge found defendants "cannot meet the threshold requirement for work product protection," because, as Mr. Murphy explained, plaintiff's "claim was purely [a] coverage case" and, while defendant Global may have "anticipated the potential for litigation should it [*sic*] determine that there was no coverage," the magistrate judge concluded draft documents were not actually prepared in anticipation of litigation. *Id*. at 8–9; *see also* Murphy Decl. at 42 ¶ 12. The court finds no fault in that conclusion. "[T]he hiring of counsel is not in and of itself enough to anticipate litigation within the meaning of the work-product doctrine." *Beachfront N. Condo. Ass'n, Inc.*, 2015 WL 55402, at *5; *Am. Home Assur. Co. v. United States*, No. CIV.A. 09-CV-258 DM, 2009 WL 3245445, at *2 (D.N.J. Oct. 7, 2009) ("To assume that litigation may ensue from any accident may not be unreasonable, but the concept that the mere occurrence of an accident constitutes anticipation of litigation has been soundly rejected"). !

Moreover, defendants' heavy reliance on *Umpqua Bank v. First Am. Title Ins. Co.*, No. CIV S-09-3208 WBS EFB, 2011 U.S. Dist. LEXIS 34088, at *16-17 (E.D. Cal. Mar. 17, 2011), in which the court ordered production of coverage counsel's pre-denial work product,[8] is also unavailing. The magistrate judge's order provides a conclusion that is plausible, in light of the record in its entirety. *See Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.*, 104 F.3d 1137, 1141 (9th Cir. 1997) (quoting *Anderson v. Bessemer*, 470 U.S. 564, 573–74, (1985) ("[T]he court of appeals may not reverse [the trial court] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.")). In short, exercising the deference warranted under the circumstances, the court is not persuaded the magistrate judge misconstrued the record before her and cannot find she committed clear error.

E.   Defendants' Communications with Co-Insurers

Defendants argue the magistrate judge "relies on the irrelevant fact that there was no engagement letter reflecting retention of Condon & Forsyth's [*sic*] on behalf of the co-insurers" to conclude communications between defendants and co-insurers are not entitled to

---

[8] Defendants cite this case in their first and second motions to reconsider. *See* First Mot. to Recons. at 15, ECF No. 197; Sec. Mot. to Recons. at 23, ECF No. 248.

14

1  protection of the attorney-client privilege.[9]  Sec. Mot. to Recons. at 24.  On the other hand,
2  plaintiff notes under New Jersey law "pre-denial communications are presumptively not
3  privileged."  Opp'n at 20 (citing *Zawadsky v. Bankers Standard Ins. Co.*, No. 14-2293
4  (RBK/AMD), 2015 U.S. Dist. LEXIS 173789, at *19 (D.N.J. Dec. 30, 2015) (ordering production
5  of communications between insurer and its in-house counsel prior to issuance of final denial
6  letter)).  Moreover, it is defendants' burden to prove the attorney-client privilege applies to these
7  communications.  *See Horon Holding Corp. v. McKenzie*, 341 N.J. Super. 117, 124, 775 A.2d
8  111, 116 (App. Div. 2001) ("The person asserting the privilege [] bears the burden to prove it
9  applies to any given communication").

10  The court finds the record supports the conclusion that communications between
11 defendants and co-insurers occurred prior to the first denial letter being mailed to plaintiffs, when
12 defendants were considering the question of whether any damage sustained by plaintiffs was
13 covered by the policy.  The timing of these communications supports plaintiff's argument that the
14 communications were not privileged, because they were part of the investigation of plaintiff's
15 claim.  Moreover, the record does not support the conclusion that simply because defendants
16 hired an attorney, Global anticipated litigation.  Murphy Decl. ¶¶ 9, 12.  As plaintiff notes,
17 defendants' "highly sophisticated" business with an "entire in-house legal department" is
18 inconsistent with its choice "not to secure an engagement letter with Condon & Forsyth," Opp'n
19 at 21, but it is consistent with the magistrate judge's finding that outside counsel was hired to
20 perform routine investigative services, not legal work.  As the magistrate judge concluded,
21 defendants have not satisfied their burden of proving Global anticipated litigation as of
22 August 24, 2015, the date it retained counsel.  *See* Murphy Decl. ¶ 13.
23 /////
24

---

[9] The court notes the magistrate judge "relies on testimony establishing that [defendants] retained Condon & Forsyth on behalf of all co-insurers as well as itself . . . [and] that testimony is then rejected in connection with communications between defendants and the co-insurers."  Sec. Mot. to Recons. at 20 n.10–11, 23.  To clarify, the record establishes that on August 24, 2015 defendant retained Condon & Forsyth on its own behalf and on behalf of all insurers involved in this matter. Murphy Decl. ¶¶ 4, 6.

15

Therefore, defendants must provide plaintiff access to documents dated beginning August 21, 2015, when plaintiff presented its claim to defendants, through October 4, 2016, when defendants issued its first denial letter to plaintiff.

F.  Claims Manual Document Dispute Moot

The court need not address the magistrate judge's ruling on plaintiff's motion to compel the remainder of the claims manual documents. Sec. MJ Order at 12:4–15. This issue is now moot given defendants' production of an "unredacted copy of the North American Claims Handling Agreement (NACHA) and fee schedule." Sec. Mot. to Recons. at 10 n.4. Moreover, plaintiff "marked the fee schedule as Deposition Exhibit 204 and questioned [defendants'] witnesses on its contents." *Id.* at 11 n.4.

G.  Defendants' Joint Defense Agreement

Finally, plaintiff seeks production of defendants' Joint Defense Agreement, which defendants identified but have refused to provide on grounds that it is irrelevant to the dispute. Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 20:20–22. Defendants argue the magistrate judge's "conclusions . . . concerning privilege . . . and its pool members including Mitsui, beginning on August 24, 2015 contradict the unrefuted evidence in the record and are thereby clearly erroneous and contrary to law." *Id*. at 24–25 (citing Resp. & Obj. to Pl.'s Interrog. at 147:9–11, ECF. 178, ("[T]he Joint Defense Agreement [with defendant Mitsui Sumitomo Insurance Company of America] was entered into on August 17, 2017, after this litigation was commenced")). The magistrate judge was not persuaded that defendants' claims investigation process prior to denial was anything but a claims investigation in the ordinary course of business. Sec. MJ Order at 12. Moreover, the magistrate judge relied on the same reasoning in denying the existence of an attorney-client privilege, *id*. at 7–8, to justify the conclusion that the Joint Defense Agreement should be produced, *id.* at 12:22–24.

The record here supports the conclusion defendants "acted for and on behalf of its pool members, including Mitsui, in retaining C&F in August 2015." Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 30:4–8; *see* Murphy Decl. ¶ 4. Mitsui retained its own counsel after plaintiff commenced this litigation, at which point Mitsui and defendants entered into the

Joint Defense Agreement on August 18, 2017. Jt. St. Re Disc. Disagreement Re Pl.'s Mot. at 30:6–8. Plaintiff counters persuasively that defendants' recent attempt to use its investigation to defend against plaintiff's bad faith claim enhances the relevance of the Agreement. Opp'n at 12. The evidence provided by defendants does not establish that, upon tender of plaintiff's claim, defendants immediately treated the claim as a coverage action. Evidence of defendants' Joint Defense Agreement with Mitsui therefore is not privileged. The court cannot conclude that the magistrate judge in this respect committed clear error.

IV.   SUMMARY

Defendants' motion for reconsideration of the magistrate judge's October 7, 2019 order granting plaintiff's motion to compel is DENIED.

This order resolves ECF No. 248.

IT IS SO ORDERED.

DATED: January 14, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE