UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEROJET ROCKETDYNE, INC., <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL AEROSPACE, INC., et al., <br><br> Defendants. | No. 2:17-cv-01515 KJM-AC <br><br><br> ORDER |

In its March 12, 2019 amended scheduling order, the court agreed to resolve certain motions *in limine* prior to the Final Pretrial Conference. Am. Sched. Order at 5 [1], ECF No. 185. As described below, defendants' motion *in limine* to exclude proposed expert testimony of Laura Montgomery, ECF No. 211, is GRANTED in part and DENIED in part. Defendants' motion *in limine* to exclude proposed expert testimony of Paul Pastorek, ECF No. 214, is GRANTED.

I. BACKGROUND

This court previously set forth the factual and procedural history of this matter in its July 10, 2020 order on defendants' prior motion for judgment on the pleadings; the court incorporates that history by reference here. *See* Order at 2–3, ECF No. 271.

---

[1] The court cites to the page numbers assigned by the court's ECF system.

1

| | |
|---|---|
| 1 | Defendants move to exclude the opinions of Laura Montgomery on the issue of |
| 2 | reasonableness of the Aerojet/Orbital settlement, contained in her report dated January 15, 2019, |
| 3 | Smith Decl., Ex. E ("Montgomery Report") at 69–79, ECF No. 226, and her supplemental report |
| 4 | dated June 28, 2019, Smith Decl., Ex. F ("Suppl. Report") at 124–25, ECF No. 226. Plaintiff |
| 5 | opposes. Opp'n, ECF No. 225. Defendants replied. Reply, ECF No. 268. |
| 6 | Additionally, defendants move to exclude the proposed expert opinions of Paul |
| 7 | Pastorek on the issue of the reasonableness of the settlement Aerojet entered into with Orbital, |
| 8 | contained in his report dated January 15, 2019, Smith Decl., Ex. A ("Litig. Risk Assessment") at |
| 9 | 5–27, ECF No. 228, and his supplemental report dated June 28, 2019, Smith Decl., Ex. B |
| 10 | ("Suppl. Litig. Risk Assessment") at 32–34, ECF No. 228. Plaintiff opposes. Pastorek Opp'n, |
| 11 | ECF No. 227. Defendants replied. Pastorek Reply, ECF No. 269. |
| 12 | At hearing on the motions, Kellie Fetter and Milton Smith appeared on behalf of |
| 13 | plaintiff; Katherine Posner, Wendy Grossman and Mary Dow appeared for the Global defendants; |
| 14 | and Larry Golub appeared for defendant Mitsui Sumitomo Insurance Co. of America. Minutes, |
| 15 | ECF No. 270; July 10 Hr'g Tr., ECF No. 275. After hearing, the court submitted the matters and |
| 16 | resolves them here. |

II.  LEGAL STANDARD

The court issues its rulings on motions *in limine* based on the record currently before it. Each ruling is made without prejudice and is subject to proper renewal, in whole or in part, during trial. *See United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) ("A ruling on a motion *in limine* is not a final order . . . such rulings 'are by their very nature preliminary.'" (quoting *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1342 (9th Cir. 1985))). If a party wishes to contest a pre-trial ruling, it must do so through a proper motion or objection, or otherwise forfeit appeal on such grounds. *See* Fed. R. Evid. 103(a); *Whittemore*, 776 F.3d at 1082 (9th Cir. 2015) ("Where a district court makes a tentative *in limine* ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial, which allows the court [to] make a final ruling." (citation and internal quotation omitted)).

"Under *Daubert* and its progeny, including *Daubert II*, a district court's inquiry into admissibility is a flexible one." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594 (1993) (noting flexibility of "inquiry envisioned by Rule 702")). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook,* 598 F.3d 558, 564–65 (9th Cir. 2010) (citation and quotation marks omitted). "The *Daubert* factors do *not* constitute a definitive checklist or test, and the gatekeeping inquiry must be tied to the particular facts" of the case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999) (emphasis in original). "In sum, the trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Primiano*, 598 F.3d at 564 (quoting *Daubert*, 509 U.S. at 579 (1993)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry . . . [] it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *City of Pomona*, 750 F.3d at 1044 (citation and quotation marks omitted).

When evaluating the reliability of an expert's opinion, the court must fully probe a witness's "knowledge and experience. . . to satisfy its gatekeeping role . . . ." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004).

III. DISCUSSION

    A. Motion to Exclude Laura Montgomery's Opinions

Defendants move to exclude Laura Montgomery's opinions on the bases that (1) her report expresses legal conclusions about how the court should interpret contractual language on whether the cross-waivers between Aerojet and Orbital, and between Orbital and Virginia Commercial Space Flight Authority ("VCSFA"), complied with the Commercial Space Launch Act ("CSLA") and the relevant Federal Aviation Administration ("FAA") regulations; and (2) her conclusions are based on unreliable methodology. *See generally* Defs.' Mem. Mot. Lim., ECF No. 212 (citing Montgomery Report). In opposition, plaintiff asserts the basis of Ms. Montgomery's testimony is her knowledge of the CSLA and FAA regulations that "enables her to link that knowledge and experience to the facts of this case, and explain why the cross-waivers at

issue here were defective, Opp'n at 13, which it says will be useful information for the jury on the reasonableness of the settlement between Aerojet and Orbital, *id*. at 12. In reply, defendants counter that "Montgomery's conclusions [on cross-waivers] are legally flawed." Reply at 16 (citing *Huawei Techs., Co. Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 965 (N.D. Cal. 2018) ("to the extent that any of these [experts'] opinions are based on incorrect legal assumptions or propose views that diverge from the actual law . . . those opinions may be excluded via motions in limine")). The court addresses these arguments in turn, after reviewing Ms. Montgomery's credentials.

1. Ms. Montgomery's Qualifications

Ms. Montgomery has extensive education in the subject matter of this litigation. *See* Montgomery Report at 69. Montgomery spent 22 years at the FAA as a regulatory attorney, including as Senior Attorney for Commercial Space Transportation and as Manager of the Space Law Branch specializing in requirements for reciprocal waivers of claims among launch participants. *Id*.; *see also* Smith Decl., Ex. G ("Montgomery CV") at 127–130, ECF No. 226. Ms. Montgomery also served as the managing attorney in the Office of the Chief Counsel at the FAA, in Washington, D.C. and was responsible for overseeing the development of commercial space regulations, launch risk, and safety equivalency; she also has testified before Congress regarding the FAA's interpretation of the CSLA. *Id*. These credentials demonstrate Ms. Montgomery possesses the "knowledge, skill, experience, training, or education" necessary to justify her as an expert to speak knowledgably about aspects of the commercial aerospace industry relevant to this case. Fed. R. Evid. 702 ("the expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact in issue.").

Defendants argue Ms. Montgomery's opinions must be excluded because she fails to articulate any methodology at all, Mem. Mot. Lim., at 24, and the novel issues presented in this case mean her experience cannot have provided her a reliable methodology to apply to the facts of this case. *Id*. (citing Montgomery Report and Suppl. Report). In opposition, plaintiff argues experience-based testimony does not require a particular methodology and a witness relying

4

primarily on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Opp'n at 13 (citing Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments ("text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience")). Here, Ms. Montgomery expressly states, "Based on my experience at the FAA and with the commercial space launch industry, my opinions are as follows:" to indicate she relies on her experience in writing her report. Assessment at 6. At this juncture, the court need only determine whether Ms. Montgomery possesses the experience necessary to render her testimony credible and helpful to the jury. *See Doe v. Cutter Biological, Inc., a Div. of Miles Labs., Inc.*, 971 F.2d 375, 385 (9th Cir. 1992) ("The fact that [] experts were not licensed hematologists does not mean that they were testifying beyond their area of expertise."). There is no basis for the court to preliminarily exclude Ms. Montgomery as unqualified to testify as an expert.

### 2. Contract Interpretation

As noted, this case will require resolution of issues of contract interpretation, and an "expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (emphasis in original) (applicable law is distinct and exclusive province of the court).

A review of Ms. Montgomery's report reveals that some of her opinions reflect contract interpretation and therefore are inadmissible as treading on ultimate issues of law. For example, Ms. Montgomery opines in one instance, that "[i]t is ambiguous as to whether Orbital waived claims against Aerojet for damages arising out of the October 28, 2014 launch . . . . Orbital might have succeeded in claiming that it had not waived claims against Aerojet . . . ." Montgomery Report at 69 & 74. Ms. Montgomery also expresses her view that an alleged omission in the Orbital/Aerojet cross-waiver "may have been deliberate on Orbital's part because the verb 'agrees' is grammatically correct in that it applies to a single entity" *Id*. at 74 (referring

/////

/////

5

to Orbital/Aerojet contract). Other impermissible opinions articulated by Ms. Montgomery include the following:

- ■ "Orbital could have asserted that pursuant to the plain language of this [contract] provision, Orbital had not waived claims against Aerojet." Montgomery Report at 74 (referring to the Orbital/Aerojet contract).
- ■ "At the very least, there is an ambiguity about whether Orbital had in fact waived claims against Aerojet, and it is unclear how the FAA or the commercial space industry would understand this omission." *Id*. (same).
- ■ "Since the parties did not agree to the applicability of federal law to their claims, this could have left state law as the law in effect under the contract . . ." *Id*. (same).
- ■ "If Orbital and VCSFA intended the third parties to mean their respective contractors and subcontractors, they did not say so." *Id*. at 75 (referring to Orbital/VCSFA contract).
- ■ "It also is ambiguous whether launch operations mentioned in the agreement between Orbital and VCSFA are the same as the 'licensed activities' of the FAA's cross-waivers." *Id*. (same).

Except for these statements and others like them, the court finds Ms. Montgomery's opinions would assist a lay jury in understanding the broad principles of the CSLA and how cross-waivers normally work in aerospace industry. For example, to the extent Ms. Montgomery describes the history of reciprocal waivers and claims, her testimony is permissible: "In 1988, Congress passed amendments to what was then called the Commercial Space Launch Act to address the allocation of financial risk between and among the participants to a launch licensed under the statute. Those participants included the launch operator, its customer, the U.S. Government, and their respective contractors and subcontractors." *Id*. at 71. Accordingly, Ms. Montgomery may offer opinion testimony based on facts or data personally observed and information made aware to her.

/////

/////

6

### 3. Conclusion

The parties are directed to meet and confer to propose a redacted version of the report by the time of the final pretrial conference, identifying any disputes about how this order is to be applied. The redacted report as approved by the court will serve as a guide in resolving evidentiary disputes during trial, with the court addressing any admissibility issues as they arise.

### B. Paul Pastorek

Defendants move to exclude Paul Pastorek's opinions, arguing his reports on the reasonableness of the Orbital settlement: (1) contradicts the record because what Aerojet refers to as a "Handshake Agreement" is the unfinished product of negotiations between Aerojet and Orbital that took place prior to the Orb-3 incident, and subject to Rule 408 of the Federal Rules of Evidence pertaining to most, if not all, negotiations leading up to it; (2) rest on an unreliable methodology; (3) are likely to confuse the jury and prejudice defendants; and (4) exceed the scope of permissible expert opinion because only the court has authority to decide the legal issue of liability coverage. Defs.' Mem. Mot. Lim. at 16, 19, 36, ECF No. 215. In opposition, plaintiff argues (1) defendants' motion is a disguised motion for summary judgment; (2) Pastorek's report addresses all the factors a litigation risk assessment should involve; (3) Pastorek's testimony will not unfairly prejudice defendants; and (4) Pastorek's report does not provide any opinions on the legal issue of coverage. Pastorek Opp'n at 10–30. In reply, defendants argue "the question of reasonableness does not arise unless the court determines as a matter of law [on summary judgment] that Aerojet has insurance coverage for one or more categories of damages included in the $50 million settlement." Pastorek Reply at 21 (citing *S.J. Amoroso Const. Co. v. Exec. Risk Indem., Inc.*, No. C 06-2572 SBA, 2009 WL 4907736, at *12 (N.D. Cal. Dec. 14, 2009) (noting "plaintiff's ultimate recovery against the insurers will depend upon it being established that there was coverage and that the insurers . . . were obligated to indemnify [the association] under their respective policies . . .") (internal quotations and citation omitted)). The court, having considered the arguments of counsel on July 10, 2020, and the papers submitted with this matter GRANTS defendants' motion to exclude Mr. Pastorek's Report, relying on defendant's challenge to his methodology, as explained below.

### 1. Mr. Pastorek's Qualifications

Mr. Pastorek has thirty years of experience as a commercial litigation and general business lawyer; he served for two and a half years as the General Counsel of the National Aeronautics and Space Administration (NASA). *See* Litig. Risk Assessment at 6–7 (after leaving NASA in 2004, he continued to monitor the development of many different commercial space companies, including other rocket launchers); *see also* Smith Decl., Ex. A ("Pastorek CV") at 28–30, ECF No. 228.

### 2. "Standing in Shoes" of Aerojet

Defendants argue Mr. Pastorek's conclusions contradict the sworn testimony of Aerojet witnesses and contemporaneous Aerojet documents because he concludes Aerojet effectively admitted liability by virtue of the parties' settlement negotiations in 2014 whereas defendants say Aerojet and Orbital did not reach an agreement to settle the claims asserted in Orbital's 2014 complaint. Defs.' Mem. Mot. Lim. at 11 n.3 & 22 (citing Litig. Risk Assessment at 11 ("Aerojet all but acknowledged its liability for certain Contract problems and the E-17 Accident when it concluded a handshake agreement")). In opposition, plaintiff contends that given Pastorek's experience, *see* Pastorek CV at 28–30, his "standing in the shoes of Aerojet's general counsel is a logical way to assess the reasonableness of the settlement." Pastorek Opp'n at 23. Moreover, Mr. Pastorek interviewed the Aerojet officers who negotiated the settlement and read their testimony. Pastorek Opp'n at 20 ("I rendered these opinions as if I had the information Aerojet had at the time of the settlement . . ." (quoting Mr. Pastorek's report)); *see* Litig. Risk Assessment at 10. In reply, defendants argue Mr. Pastorek's Report sets forth statements without giving any indication that Aerojet was actually aware of or considered the facts embodied in those statements. Pastorek Reply at 19. For example, defendants note Mr. Pastorek sets forth a per launch cost indicating a "rough" estimate, *Id*. at 18; *see* Litig. Risk Assessment at 18. Mr. Pastorek also states, "After consulting with Aerojet personnel, I estimated the approximate steady state workforce of Orbital" and "used Aerojet's fully loaded rate for engineers," but does not say that Aerojet itself actually conducted a similar analysis prior to settlement with Orbital, Litig. Risk Assessment at 20. The court is persuaded by defendants' arguments.

8

In his expert report, Mr. Pastorek states: "I have reviewed the depositions (and exhibits) of [Aerojet's CEO's and management team]: Peter Cova, George Lonergan, Michael Miller . . . [and] [] interviewed Eileen Drake, Peter Cova, Steve Bouley, Jordan Ware, Mark Tucker, Scott Ward." *Id.* at 9–10 (noting list of documents provided by Aerojet for his investigation); *see also* Suppl. Litig. Risk Assessment at 32 ("I reviewed . . . depositions and exhibits of: Peter Cova (1st, 2nd and 3rd volumes), Lonergan (1st and 2nd volumes), Steve Bouley, Warren Boley, Jordan Ware, Mark Tucker, Scott Ward, Michael Miller, Kathy Redd, Rick Tanovich, Scott Seymour, Gerald Newman, William Marlow, James Perry, Scott Ross, Tamer Ahmed, Sharon Holahan."). He references his "conversations with Steve Bouley and Pete Cova," Litig. Risk Assessment at 19, and says he "talked with Pete Cova, Steve Bouley, Mark Tucker, and others to confirm that is how Aerojet looked at these issues at the time of settlement." *Id.* He does not, however, identify with particularity documents or concrete details to pin down reliably what Aerojet considered or "believed" prior to and during settlement. Thus, the following opinions of Mr. Pastorak are impermissible, at least:

- "After consulting with Aerojet personnel, I estimated [] the approximate steady state workforce was at least 200 employees." *Id.* at 20.
- "I reviewed [] [inefficiency] factors and this time frame with Pete Cova and Steve Bouley and they believed these were reasonable numbers at the time." *Id.* at 21.
- "Another significant factor I considered in judging the reasonableness of the $50M settlement were the circumstances of the negotiations . . . through the eyes of Aerojet's CEO, Eileen Drake who settled the dispute with Orbital . . . Orbital's COO, Blake Larsen, engaged Ms. Drake in what she described was a very intense series of near daily one on one telephonic negotiations where information and proposals were exchanged. These negotiations were conducted with a clear deadline . . . . She determined $50M was Orbital's rock bottom number." *Id.* at 23.

/////

9

Moreover, at no time, either in its briefing or during hearing, did plaintiff cite authority for Mr. Pastorek being able to fill in gaps in the record by "standing in the shoes of Aerojet" in rendering his opinion. *See* July 10 Hr'g Tr. at 22:17–25 (defense counsel acknowledging lack of case law on this point). Accordingly, the court finds Mr. Pastorek's Litigation Risk Assessment improperly rests on facts the record suggests Aerojet either did not consider or could not have known at the time of settlement.

### 3. Methodology

At hearing, plaintiff's counsel clarified Aerojet also relies on Mr. Pastorek's knowledge, training and experience in arguing his opinions are admissible, even if he cannot opine as someone "standing in the shoes of Aerojet's general counsel." July 10 Hr'g Tr. at 23:3–8. Aerojet represents Pastorek's "opinions on the reasonableness of the settlement between Aerojet and Orbital . . . are relevant to Aerojet's breach of contract claim." *See* Pastorek Opp'n at 7. Defendants argue "nothing in Pastorek's background qualifies him to render expert opinions quantifying damages for, among other things, what he categorizes as 'loss of efficiency.'" Pastorek Reply at 18 (citing Litig. Risk Assessment at 21, where Pastorek acknowledges he applied estimated total cost of Orbital's labor to estimated loss of efficiencies to arrive at his damages estimates). Defendants rely on *Garner v. Am. Mut. Liab. Ins. Co.*, 31 Cal. App. 3d 843, 848 (Ct. App. 1973), which notes a litigation risk assessment should involve "a careful measuring of the legal facets of the case, the probabilities of a verdict and its anticipated range if adverse, the strengths and weaknesses of all of the evidence to be presented on either side so far as known, . . . [and] the experience and capacity of counsel, and the history of the particular jurisdiction in similar litigation." Defs.' Mem. Mot. Lim. at 20.

A review of Mr. Pastorek's report confirms he relies on his own experience rather than evaluating the evidence likely to form the record. For example, in the section entitled, "Detailed Discussion of Damages," Mr. Pastorek makes assertions regarding damages estimates "based on [his] knowledge and experience," *see* Litig. Risk Assessment at 19, and says he "approximated the costs, particularly labor costs, of Orbital in a normal state and then determine[d] what events transpired as a result of the ORB-3 Accident that would lead to a loss of

efficiency of Orbital's activities." *Id*. Mr. Pastorek's experience in commercial litigation as general counsel for NASA and otherwise is not sufficient to support his mode of analysis and Aerojet cites no equivalent cases supporting reliance on experience alone. Accordingly, the court finds his proposed testimony will not be helpful to the trier of fact and should be excluded in its entirety.

### 4. Settlement; Legal Opinions; Prejudice

Given the court's conclusions above, it need not reach defendants' argument based on Rule 408, or that if Mr. Pastorek is allowed to testify regarding his opinions, he would be infringing on the province of the court by intruding into "the legal issue of allocation between uncovered contract damages and what Aerojet contends are potentially covered damages." Pastorek Reply at 20 & n.16 (citing *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999)). It also need not resolve whether having Mr. Pastorek take the stand would risk undue prejudice given that he would say if asked he was the point person after the Columbia disaster. *See* July 10 Hr'g Tr. at 27:15–19; *id*. at 20–23 (Q- "Doesn't that lead the jurors' minds to . . . invoke sympathy for him by extension, in addition to clothing him in the expertise you would like to suggest he has?").

### 5. Conclusion

Defendants' motion to exclude the testimony of Mr. Pastorek is GRANTED in full.

## IV. SUMMARY

Accordingly, IT IS HEREBY ORDERED:

1. Defendants' motion in limine, ECF No. 211, is GRANTED in part and DENIED in part;
2. Defendants' motion in limine, ECF No. 214, is GRANTED.

DATED: May 6, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE